*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
> *Plaintiff-Appellee,*

v.

Nos. 08-4218; 09-3658

LANCE K. POULSEN,
> *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 07-00209-001; 06-00129-001—Algenon L. Marbley, District Judge.

Argued: October 14, 2010

Decided and Filed: August 25, 2011

Before: GIBBONS and WHITE, Circuit Judges; MALONEY, Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** William R. Terpening, Peter Crane Anderson, ANDERSON TERPENING PLLC, Charlotte, North Carolina, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** William R. Terpening, ANDERSON TERPENING PLLC, Charlotte, North Carolina, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, Douglas W. Squires, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

[*]The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.   This consolidated case, involving both a securities fraud conviction (the "Securities Case") and an obstruction of justice conviction (the "Obstruction Case"), chronicles the rise and fall of National Century Financial Enterprises, Inc. ("NCFE") and, with it, defendant–appellant Lance K. Poulsen ("Poulsen").

The cases were tried separately.   In the Obstruction Case (2:07-cr-209, No. 08-4218), Poulsen appeals his conviction and sentence for obstruction of justice, witness tampering, and conspiracy.   The conduct at issue occurred while the Securities Case was pending, but the Obstruction Case was tried first.   In it, the district court sentenced Poulsen to 120 months in prison, three years of supervised release, a $17,500 fine, and special assessments.   On appeal, Poulsen argues the district court erred in (1) denying his request to give an entrapment instruction; (2) denying his motion to suppress wiretap evidence; and (3) allowing into evidence the amount of loss for the purpose of Poulsen's sentence.   We affirm the district court on each of these issues.

In the Securities Case (2:06-cr-129, No. 09-3658), Poulsen appeals his conviction and sentence for conspiracy to commit securities fraud, wire fraud, and money laundering.   In May 2006, Poulsen and a number of co-defendants were indicted, with a superseding indictment returned in July 2007.   On Poulsen's motion, the district court severed Poulsen's case from his co-defendants.   The district court sentenced Poulsen to 360 months in prison to run concurrently with the sentence in the Obstruction Case.   On appeal, Poulsen argues (1) the district court erred in denying his motion to transfer venue; (2) the district court improperly admitted evidence from the Obstruction Case; (3) the district court erred in allowing into evidence the amount of loss without also admitting evidence of other causes of that loss; and (4) his sentence was procedurally and substantively unreasonable.   We affirm the district court on each of these issues.

I.

National Century Financial Enterprises, Inc. ("NCFE"), headquartered in Dublin, Ohio, was incorporated at the end of 1990 and became one of the largest healthcare finance companies in the United States. Defendant–appellant, Lance Poulsen was a co-founder of NCFE and served as its owner, chairman, and chief executive officer. Under NCFE's business model, NCFE primarily financed healthcare providers by purchasing their accounts receivable that were payable to private insurers and public healthcare programs. NCFE purchased specific accounts receivable from healthcare providers and issued bonds to investors that were backed by the accounts receivable as collateral. Subsidiaries of NCFE purchased those receivables with borrowed funds, monies obtained through securities that were backed by the receivables. NCFE and its representatives reported that those obligations were supported by adequate reserves and consistently maintained investment grade, primarily triple-A ratings. NCFE and its subsidiaries generated profits from fees charged to the healthcare providers for the advances as well as gains from the spread between the discounted costs of the receivables and the collections on the receivables.

In reality NCFE used investors' money to advance funds to certain providers who did not submit any accounts receivable in return, including those owned in whole or in part by Poulsen and other principals of NCFE. Funds were advanced to providers without acquiring any receivables or in amounts in excess of the receivables purchased, when NCFE was required to purchase solely eligible accounts receivable. Poulsen was involved in advancing funds in this manner that violated the rules of the agreements in place with NCFE's investors; he approved numerous such advances and the majority of advanced funds were to six providers owned by Poulsen through his stakes in NCFE and other entities. Monthly reports were issued to indenture trustees to verify that minimum reserve account balances were met. In order to meet the minimum required reserve balances, NCFE devised a system to transfer funds between the reserve accounts to meet minimum reserve levels. Poulsen was active in the decisions to transfer money between the funding programs, to change the reporting dates, and to falsify figures in investor

reports. The Presentence Report ("PSR") found that "[a]s one of the principals, Poulsen possessed the most knowledge of the ongoing criminal activity in this conspiracy."

In the spring of 2002, NCFE's auditing firm began to question discrepancies in several accounts, so it continued to request documentation and did not complete an audit report. In the fall of 2002, when NCFE attempted to shift funds between the programs, one of the trustee banks denied the transfer. The following week, at a meeting with Poulsen and others, investors first learned that NCFE insiders had been funding certain providers without acquiring accounts receivable in return. NCFE prepared an investor report in late October 2002 disclosing actual balances in its reserve accounts, and NCFE fund ratings for two of its subsidiary programs were downgraded from triple-A ratings to junk-bond status.

On November 8, 2002, Poulsen was forced to resign from his positions as director of NCFE's board and chief executive officer. Days later, the FBI searched NCFE's office, seizing computer and document records. On November 18, 2002, NCFE sought Chapter 11 protection in bankruptcy court.

On May 19, 2006, the first indictment in the Securities Case was returned against Poulsen, Rebecca S. Parrett, Donald H. Ayers, Roger S. Faulkenberry, Randolph H. Speer, James Dierker, and Jon A. Beacham.

After the collapse of NCFE and Poulsen's initial indictment in the Securities Case, conversations between a friend of Poulsen, Karl Demmler, and a former employee of Poulsen, Sherry Gibson, formed the basis of the Obstruction Case. Karl Demmler was a close friend of Poulsen's from the mid-1980s when Poulsen first moved to Dublin, Ohio. Sherry Gibson was one of NCFE's first twelve employees, and she rose in the ranks at NCFE to executive vice president of compliance.

After the collapse of NCFE, in late 2003, Gibson pled guilty to conspiracy charges related to her employment at NCFE and faced an initial sentence of four years' imprisonment and forfeiture of $420,000. Her plea agreement, which listed Poulsen as an unindicted co-conspirator, required her to meet with prosecutors and truthfully answer

all questions about her own and others' involvement with NCFE.  In light of her cooperation in the investigation, Gibson's sentence was shortened to thirty months.

While Gibson was incarcerated, she and Demmler stayed in contact.  After Gibson was released from prison, she contacted Demmler on June 19, 2007, and they met.  Demmler informed Gibson that Poulsen intended to make her "whole."  In this conversation, Demmler also suggested that Gibson ask Poulsen to pay her for what she lost while incarcerated; Demmler suggested that they meet on a weekly basis; and Demmler stated that Poulsen asked him to contact Gibson to help him "win his case."

On June 20, 2007, Gibson contacted the FBI.  From this point on, Gibson was working with the FBI.  She was "given instructions on a continual basis about when to respond to a voicemail, when to initiate a telephone call, when to arrange a meeting," and she wore a concealed recording device when meeting with Demmler.

On July 10, 2007, while the FBI was still investigating the Obstruction Case and over a year after the first indictment in the Securities Case, the government obtained the final, operative Superseding Indictment, adding defendant James K. Happ.  Poulsen was not yet arrested in either case at this time.

On July 13, 2007, Demmler and Gibson met again, and their conversation was recorded.  Demmler suggested that she not "change her story" at trial but rather conveniently forget things and "prevaricate."  On July 18, 2007, Demmler informed Gibson that he had called Poulsen's cellular telephone and indicated that he had informed Poulsen about their conversations.  On July 25, 2007, Demmler informed Gibson that Poulsen wanted to "sit down and talk to" her, but he wanted to do so under the right circumstances.

The FBI issued subpoenas for Demmler's telephone records.  The telephone records revealed that Demmler and Poulsen had spoken more than thirty times between January and June of 2007.  The FBI then obtained a pen register on Demmler's cellular telephone.  On August 6, 2007, Special Agent Jeffrey Williams of the FBI submitted an

affidavit in support of the application for the interception of wire communications from Demmler's cellular telephone. The wiretap was authorized on that same day.

From August 20, 2007, until October 18, 2007, the government monitored Poulsen's activity through the wiretap on Demmler's telephone, the recorded conversations between Gibson and Demmler, and Gibson's cooperation with the FBI. These conversations provided the following evidence: discussions between Poulsen and Demmler about getting Gibson a new attorney who was preapproved by Poulsen; multiple conversations between Poulsen and Demmler and Demmler and Gibson about how Gibson would be paid; instructions on how Gibson should answer prosecutors' questions and how she should testify; and Poulsen's and Demmler's concerns about discussing Gibson over the telephone.

On October 18, 2007, Demmler and Gibson met pursuant to an agreement that Gibson would drive Demmler to the airport because Demmler was planning a trip to Venezuela. At this meeting, Demmler gave Gibson a signed, blank check that she would eventually be able to use to procure her payment. Demmler was arrested that day at the Columbus airport. The same day, Poulsen was arrested in Florida in relation to his involvement in the Obstruction Case and has remained in custody since that date.

Poulsen was indicted for conspiracy to obstruct justice and to tamper with a witness in October 2007. A superseding indictment, returned in 2007, and a second superseding indictment, returned in 2008, added a count of substantive obstruction of justice and two counts of witness tampering.

Poulsen filed a number of motions in the Obstruction Case. Among these was a motion filed on January 10, 2008, to suppress electronic surveillance evidence. Poulsen argued the affidavit supporting telephone wiretaps failed to establish probable cause or necessity and argued the affidavit contained misleading statements and omissions entitling Poulsen to a *Franks* hearing. The district court denied Poulsen's motion to suppress on March 17, 2008.

On March 10, 2008, Poulsen filed a motion *in limine* requesting an entrapment instruction. The district court denied this request at trial.

The government brought the Obstruction Case to trial first. On March 26, 2008, a jury found Poulsen guilty of conspiracy, in violation of 18 U.S.C. § 271; witness tampering, in violation of 18 U.S.C. § 1512(b)(2)(A); witness tampering by influencing testimony, in violation of 18 U.S.C. § 1512(b)(1); and obstruction of justice, in violation of 18 U.S.C. § 1503(a). In May 2008, Poulsen moved to continue and consolidate the sentencing proceedings in the Securities and Obstruction Cases, but this motion was denied. The district court sentenced Poulsen to 120 months in prison, three years of supervised release, a $17,500.00 fine, and the required special assessments. Poulsen appealed.

In the Securities Case, the district court granted Poulsen's motion for severance from the other defendants on January 4, 2008, and his trial began in October 2008.

Prior to trial, Poulsen filed a motion *in limine* to exclude several types of evidence in his Securities Case. Specifically, the motion sought to exclude evidence referencing the Obstruction Case or the underlying facts of that case as improper propensity evidence and as unfairly prejudicial. The motion was denied. At trial, evidence from the Obstruction Case was presented through the testimony of Sherry Gibson. Gibson testified for five days, two of which contained direct and cross examination on the facts of the Obstruction Case.

Poulsen also moved to exclude evidence of the dollar amount purportedly lost by investors or other third parties as a result of NCFE's bankruptcy, and this request was denied. Finally, Poulsen filed a motion to transfer venue in his Securities Case "because pretrial publicity has, and will, irreparably and unfairly prejudice any jury against Mr. Poulsen." The district court also denied this motion.

On October 31, 2008, a jury found Poulsen guilty of conspiracy, in violation of 18 U.S.C. § 374; securities fraud, in violation of 15 U.S.C. §§ 77q(a), 77x; wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to commit money laundering, in violation

of 18 U.S.C. § 1956; and concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(1).  The PSR in Poulsen's Securities Case estimated the loss amount at $2,894,150,500.  Poulsen filed a written objection to the PSR based on the government's failure to prove the specific loss amount at trial.  At Poulsen's sentencing, the district court overruled Poulsen's objections and found that the loss amount estimated by the government in the PSR was a fair estimate.  Poulsen was sentenced to 360 months in prison to run concurrently with the sentence in the Obstruction Case, three years of supervised release, and restitution in the amount of $2,384,147,105.09.

Poulsen's Obstruction and Securities Cases were consolidated on appeal.

## II.

On appeal of the Obstruction Case, Poulsen argues (1) the district court erred in denying his request to give an entrapment instruction; (2) the district court erred in denying his motion to suppress wiretap evidence; (3) the district court erred in allowing into evidence the amount of loss for the purpose of calculating his sentence.  We affirm the district court's decision on each of these issues.

## A.

Poulsen argues that he came forward with sufficient evidence of entrapment and thus was entitled to an entrapment jury instruction.

Jury instructions are reviewed as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury.  *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002).  This court will reverse a district court's denial of a jury instruction "if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the

defendant's defense." *Id.* (quoting *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).[1]

A defendant is entitled to an entrapment instruction if there is sufficient evidence from which a reasonable jury could find entrapment. *Mathews v. United States*, 485 U.S. 58, 62 (1988). The defense of entrapment has two elements: (1) government inducement of the crime, and (2) the defendant's lack of predisposition to engage in the criminal activity. *Khalil*, 279 F.3d 364. To warrant an entrapment instruction, the defendant must come forward with evidence that supports both elements. *Id.* If Poulsen had provided evidence from which a reasonable jury could have found both that the government induced the crime of obstruction of justice and that he was not predisposed to commit this crime, he would be entitled to an entrapment instruction. *Id.* at 364–65.[2] In this case, however, Poulsen has not met this burden.

The first element, government inducement, must be something more than "merely afford[ing] an opportunity or facilities for the commission of the crime." *Mathews*, 485 U.S. at 66; *see also United States v. Graham*, 856 F.2d 756, 763 n.2 (6th Cir. 1988). Courts rarely focus the entrapment inquiry on this element, but because Poulsen came forward with no evidence of inducement, this element is dispositive.[3] In this case the government "merely afforded an opportunity" in which Poulsen's criminal

---

[1] Generally, a party must object to a jury instruction to preserve the matter for appeal. Fed. R. Crim. P. 30(d). Here, although Poulsen's attorney failed to object before the jury retired to deliberate, the government never argued that the claim should be reviewed for plain error on appeal. "[T]hough plain-error review might have been available for this claim, we will not apply the plain-error standard unless requested to do so by one of the parties." *United States v. Williams*, 641 F.3d 758, 763 (6th Cir. 2011) (citing *United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010); *United States v. Salem*, 597 F.3d 877, 884 (7th Cir. 2010); *United States v. Blackie*, 548 F.3d 395, 404 (6th Cir. 2008) (Sutton, J., concurring)). Thus, we will review the denial of the instruction for abuse of discretion.

[2] Also, if Poulsen had come forward with such evidence, the burden would then have shifted to the government to prove predisposition beyond a reasonable doubt. *United States v. Meyer*, 803 F.2d 246, 249 (6th Cir. 1986); *United States v. Jones*, 575 F.2d 81, 83–84 (6th Cir. 1978); *see also* Sixth Circuit Criminal Pattern Jury Instruction No. 6.03(6) ("Consider all the evidence, and decide if the government has proved that the defendant was already willing to commit the crime. Unless the government proves this beyond a reasonable doubt, you must find the defendant not guilty.").

[3] Our case law does not include an extensive definition of inducement. Sixth Circuit Criminal Pattern Instruction 6.03 treats inducement as more or less synonymous with persuasion. We need not examine exactly what sort of government conduct may amount to inducement because here there was no government action at all other than the provision of a chance to influence a witness—a chance that occurred only because the witness herself contacted the government.

activity could be monitored by Gibson.  Poulsen was never directly in touch with Gibson, and Poulsen even states that in response to Gibson's actions "no meetings were ever scheduled, no money was exchanged, and no testimony was ever falsified."

We have explicitly chosen not to adopt the doctrine of indirect entrapment, which Poulsen seems to be asserting.  *United States v. McLernon*, 746 F.2d 1098, 1109 (6th Cir. 1984).  Indirect entrapment occurs when "a person is brought into a criminal scheme after being informed *indirectly* of conduct or statements by a government agent which could amount to inducement."  *Id.* at 1108 (quoting *United States v. Valencia*, 645 F.2d 1158, 1168 (2d Cir. 1980) (emphasis added)).  Although we do not recognize indirect entrapment, we do recognize that entrapment "may occur as the result of conduct by third-party agents or as the result of government action through private citizens."  *Id.* at 1109.  Inducement for the purpose of entrapment may occur through private citizens acting as government agents upon the instructions of the government, but Poulsen's situation, if anything, constitutes indirect entrapment as he was informed indirectly of the government agent's actions.  For instance, Gibson initiated conversations with Demmler, not Poulsen; the communications regarding the scheme to demand money from Poulsen in exchange for Gibson's testimony occurred between Demmler and Gibson, but not Poulsen; and Demmler, not Poulsen, proposed that Gibson have amnesia.  Poulsen has failed to present evidence from which a reasonable jury could find that he was induced to commit the crime of obstruction of justice.

The entrapment inquiry usually focuses on the second element, a lack of predisposition to commit the criminal activity.  This court will uphold a district court's denial of an entrapment instruction when evidence "clearly and unequivocally establishes that [the defendant] was predisposed."  *Khalil*, 279 F.3d at 365 (alteration in original) (quoting *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990)).  Because Poulsen must present evidence of both government inducement and a lack of predisposition, a finding of predisposition negates the effect of a finding of government inducement.  Here, because there was no government inducement, we need not examine the issue of predisposition.

Because there is no evidence of inducement, the district court correctly denied the request for an entrapment instruction.

B.

Poulsen argues that the district court erred when it failed to suppress all evidence seized as a result of electronic surveillance and raises two key issues with respect to the wiretap. First, he argues that the district court erred in denying his motion to suppress evidence obtained from the wiretap. Second, he argues that the district court erred in failing to give him a *Franks* hearing, in which the court would have looked at the wiretap warrant more closely to see if it was based on misleading or untrue information.

With respect to decisions on motions to suppress evidence obtained from a wiretap, we review the district court's findings of fact for clear error and questions of law *de novo*. *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007). We review the district court's denial of a *Franks* hearing under the same standard. *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008); *see also Franks v. Delaware*, 438 U.S. 154 (1978).

On the first issue, the basic standards for a wiretap order include strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968 as well as a finding of probable cause. 18 U.S.C. § 2510–2530; *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). Thus, an affiant for a wiretap application must (1) demonstrate the wiretap is necessary, (2) demonstrate that it is narrow and particular, and (3) meet the standard of probable cause.

To comply with the "necessity" requirement of Title III, the application for the wiretap order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Rice*, 478 F.3d at 716 (internal quotation marks omitted). It is not necessary, however, "to prove that every other conceivable method has been tried and failed." *Alfano*, 838 F.2d at 163. The requirement is intended to ensure that "the investigators give serious consideration to the

non-wiretap techniques prior to applying for wiretap authority." *Id.* (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)). In Poulsen's case, the affidavit specifically mentioned that the government used a confidential informant, consensual recordings, a pen register, physical surveillance, and documents before resorting to the wiretap. The magistrate and the district court found these methods sufficient to meet the necessity requirement for authorization of a wiretap, and we affirm that decision.

The affidavit must also have been narrow and specific enough to meet the requirements of § 2518 of the Act. 18 U.S.C. § 2518(1) (requiring that applications include the identity of the officer making the application, a full and complete statement of the facts and circumstances relied upon by the application to justify a belief that the order should be issued, a statement of the period of time for the interception, *etc.*). The affidavit met these requirements, and the magistrate concluded that "there is probable cause to believe that the TARGET CELLPHONE will continue to be used in connection with the commission of the" crimes and that "normal investigative procedures have been tried and failed, reasonably appear unlikely to succeed if continued, reasonably appear unlikely to succeed if tried, or are too dangerous."

The magistrate judge properly found probable cause. Certainty is not required, but rather a fair probability and something more than mere suspicion. *Alfano*, 838 F.2d at 162. A succession of superficially innocent events can be sufficient for probable cause if "a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one." *Id.* at 162–63 (internal quotation marks omitted); *see also id.* at 162 (finding that a "recurring pattern of multiple connections among the phone calls, between and among recognized members of the conspiracy, and connected to . . . the key defendant in this case" created a fair probability that intercepting those calls would reveal evidence of a crime). Poulsen acknowledges that the government was both aware of Poulsen and Demmler's telephone calls and had access to the communications between Demmler and Gibson before it requested the wiretap, all of which indicated criminal conduct. We therefore affirm the denial of Poulsen's motion to suppress evidence obtained in the wiretap.

On the second issue, to obtain a *Franks* hearing a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [] the allegedly false statement is necessary to the finding of probable cause." *Mastromatteo*, 538 F.3d at 545 (alteration in original) (quoting *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)). "The determination as to whether a statement made in an affidavit is made with reckless disregard of the truth is a fact question." *Rice*, 478 F.3d at 709; *see also United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (applying the clear error standard to this determination). If, when the alleged false statement is put aside, the affidavit no longer provides the court with probable cause, then a *Franks* hearing is warranted. *Mastromatteo*, 538 F.3d at 545. Probable cause remains present if the affidavit still "provide[s] the magistrate judge with a basis for finding that there was a fair probability that contraband or evidence of a crime would be found." *Id.* (alteration in original) (quoting *Graham*, 275 F.3d at 504).

To reverse the district court's denial of a *Franks* hearing in this case, we would have to find that the district court clearly erred when it determined that (1) Poulsen did not make a substantial preliminary showing of the inclusion of a false statement in the affidavit and that (2) this statement was not necessary to the determination of probable cause. *See Mastromatteo*, 538 F.3d at 545.

Poulsen alleges the following misleading statements and omissions with respect to the affidavit: the affiant referred to a "counter-surveillance" tactic in which "Poulsen was observed using evasive driving tactics," when Poulsen explains this as navigating through construction; the affiant omitted key facts such as the fact that Poulsen met with his attorneys instead of Gibson and Demmler and that Poulsen asked Gibson through Demmler to contact his attorney; the affidavit suggests that Gibson's safety was an issue so a wiretap was necessary; and the affidavit omitted a "wealth of exculpatory evidence." Despite these alleged false statements and omissions, the district court found that Poulsen "has not made any showing, let alone a 'substantial preliminary showing,' that Agent Williams made any of the purportedly false statements intentionally or with

reckless disregard for their truth." This finding is not clearly erroneous, and we agree with the district court's decision to deny Poulsen a *Franks* hearing.

C.

Finally, in his appeal of the Obstruction Case, Poulsen argues that the district court erroneously relied on the government's unsubstantiated loss estimate, based on allegations related to the Securities Case, to improperly enhance Poulsen's sentence. Poulsen argues that the district court erred by (1) allowing evidence from the Securities Case to be introduced in the Obstruction Case; (2) not requiring the government to prove the alleged loss amount by a preponderance of the evidence at any time; and (3) failing to consider causes of the loss amount other than the alleged fraud.

We review Poulsen's sentence for reasonableness, examining whether the district court abused its discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007). We review the district court's legal interpretations of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008). Sentencing factors are to be determined by a preponderance of the evidence. *United States v. Miller*, 161 F.3d 977, 984 (6th Cir. 1998). Additionally, "it is not necessary to remand the case simply because the trial court failed to state a detailed factual basis for [the underlying offense] enhancement." *Id.*

The district court sentenced Poulsen to 120 months' imprisonment. The district court applied § 2J1.2(c) and cross-referenced to § 2X3.1 of the Sentencing Guidelines. Section 2J1.2 applies to obstruction of justice and allows a sentencing enhancement "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense." U.S.S.G. § 2J1.2(c)(1). Section 2X3.1 creates a base level "6 levels lower than the offense level for the underlying offense" not to fall below level four or exceed level thirty. U.S.S.G. § 2X3.1(a). For the purposes of this enhancement provision, the specific offense characteristics of the charged underlying offense—facts from the Securities Case—became relevant to the sentencing calculation. Section 2B1.1 of the Sentencing Guidelines addresses the underlying crime of fraud. Section 2B1.1(a)(2) sets the base level at six, and if the loss exceeded $400,000,000, § 2B1.1(b)(1)(P) states that

the base level is to be increased by thirty levels.  The district court characterized the underlying offense as "a fraud of staggering proportions" of $2.8 billion.

The enhancement is proper if the specific characteristics of the underlying offense "were known, or reasonably should have been known, by the defendant." U.S.S.G. § 2X3.1 cmt. n.1.  Therefore, in order to apply this enhancement provision under the Sentencing Guidelines, the government need not prove the exact amount of loss, but rather that Poulsen knew or reasonably should have known that the trial he was attempting to obstruct involved fraud with losses that exceeded $400,000,000.  *See* U.S.S.G. § 2X3.1 cmt. n.1.  In order to prove that Poulsen was aware of the underlying offense characteristics, the relevant facts were those that existed at the time Poulsen acted.  *See Miller*, 161 F.3d at 990.  The Securities Case indictments and recordings of Poulsen discussing the alleged obstruction with Demmler demonstrate that Poulsen was aware that the trial he was attempting to obstruct had over $2 billion at stake; thus, the application of the enhancement provision was proper.  Because Poulsen had been indicted for the fraud in the Securities Case prior to engaging in the obstructive conduct, he clearly knew or should have known the characteristics that would make him eligible for enhancements under U.S.S.G. § 2X3.1—i.e., the loss amount involved in the underlying offense.

### III.

On appeal of the Securities Case, Poulsen argues (1) the district court erred in denying his motion to transfer venue; (2) the district court improperly admitted evidence from the Obstruction Case; (3) the district court erred in allowing into evidence of the amount of loss without also admitting evidence of other causes of that loss; (4) his sentence was procedurally and substantively unreasonable.  We affirm the district court on each of these issues.

A.

Before trial, Poulsen filed a motion to transfer his case to another venue, and the court denied that motion.  This, he alleges, denied him his right to a fair trial in a fair tribunal.  The district court found that individualized *voir dire* was unnecessary because it employed procedures (including letters with instructions to avoid media coverage, juror questionnaires addressing media exposure and juror opinions, and generalized *en mass voir dire*) that were sufficient to identify jurors with potential prejudice and minimize media exposure.  Similarly, the district court found that it was not satisfied that "so great a prejudice against [Poulsen] exists in the transferring district that [Poulsen] cannot obtain a fair and impartial trial there."

We review the district court's denial of Poulsen's motion for abuse of discretion.  *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005).  Venue transfer is mandatory "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  *Id.* (quoting Fed. R. Crim. P. 21(a)).  A change in venue can be warranted by presumptive or actual prejudice.  *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).  Poulsen must show presumptive or actual prejudice as a "demonstrable reality" not merely as a "matter of speculation."  *Jamieson*, 427 F.3d at 412 (quoting *Kelly v. Withrow*, 25 F.3d 363, 368 (6th Cir. 1994)).

Courts rarely find that presumptive prejudice exists.  *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) ("The category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow.").  We have characterized presumptive prejudice as a "circus-like atmosphere" that "pervades both the courthouse and surrounding community."  *Foley*, 488 F.3d at 387.  Simple exposure of jurors to pretrial publicity "does not presumptively establish that the defendant was denied a fair trial."  *Jamieson*, 427 F.3d at 412 (quoting *United States v. Chambers*, 944 F.2d 1253, 1262 (6th Cir. 1991)).

The thrust of Poulsen's argument is that the atmosphere surrounding his trial was "circus-like."  In support, Poulsen brings the following to the court's attention: the

reporting of inflammatory remarks by the court and prosecutors; the association of Poulsen with other convicted NCFE executives, from whose trial Poulsen's had been severed; media reports of Poulsen's personal problems; and reporting of the alleged losses experienced by the NCFE investors and victims of the fraud. Poulsen presented examples of these news stories to the district court in his motion to transfer venue. The district court acknowledged the media coverage of Poulsen's case and, while recognizing that some was negative, denied that it vilified Poulsen as he suggested. Instead, the court determined that this coverage was primarily fact-based, and courts have previously noted that "coverage that consists of straight news stories rather than invidious articles which would tend to arouse ill will and vindictiveness is not so troubling." *DeLisle*, 161 F.3d at 385 (quoting *Beck v. Washington*, 369 U.S. 541, 556 (1962)) (internal citation and quotation marks omitted). There is no evidence that prejudice was a demonstrable reality so as to establish a presumption of prejudice. The district court did not abuse its discretion in determining that the fact-based coverage did not create a presumption of prejudice.

Because Poulsen has failed to establish that pretrial publicity should be presumed prejudicial, the next step is to determine whether there was actual prejudice. *Voir dire* is the "primary tool for discerning actual prejudice." *Foley*, 488 F.3d at 387. Actual prejudice is established when "both the jury voir dire testimony and the extent and nature of the media coverage indicates a fair trial [was] impossible." *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002) (alteration in original) (internal quotation marks omitted). After Poulsen's motion to change venue, the district court was aware of the extensive media coverage of his case and "believe[d] that the voir dire procedures that it [would] employ at trial . . . [would] be more than sufficient to prevent actual prejudice." Before *voir dire*, the court took steps to identify jurors who had been exposed to media coverage and minimize such exposure. The district court order denying the motion to transfer venue discussed those steps:

> Specifically, the prospective jury members have been sent (1) a letter instructing them to avoid media coverage of this case and (2) a detailed juror questionnaire that includes questions addressing the existence and

extent of prospective jurors' media exposure and any opinions prospective jurors[] may have formed about the case. The results of this questionnaire will allow the parties to identify specific jurors with prejudice and prevent them from tainting the rest of the venire.

Actual prejudice will not be established by negative media coverage, prior knowledge of the issues involved in the case, or even "a juror's preconceived notion as to the guilt or innocence of the defendant" without something more to rebut the presumption of impartiality. *Foley*, 488 F.3d at 387; *see also United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008). The district court properly used the tool of *voir dire*, and we affirm its determination that no actual prejudice existed.

B.

In March 2008, Poulsen was convicted in the Obstruction Case of conspiracy, witness tampering, and obstruction of justice. Prior to his sentencing in that case, Poulsen filed a motion *in limine* in his Securities Case to exclude certain types of evidence, including his conviction in and the facts underlying the Obstruction Case. The district court denied this motion, holding that the "obstruction conviction and its underlying facts are admissible under Rule 404(b)." Poulsen argues that the inclusion in his Securities Case of evidence from his Obstruction Case resulted in unfair prejudice as well as "confusion of the issues, misleading the jury, undue delay, waste of time, and needless presentation of cumulative evidence." We conclude that the district court did not err in allowing evidence from the Obstruction Case.

We review the district court's denial of Poulsen's motion *in limine* for abuse of discretion. *United States v. Goosby*, 523 F.3d 632, 638 (6th Cir. 2008). The district court admitted this evidence pursuant to Federal Evidence Rule 404(b), under which the court may admit evidence of a defendant's prior bad acts if probative but not used as character evidence. *United States v. Mack*, 258 F.3d 548, 552–53 (6th Cir. 2001). This circuit's three-part admissibility inquiry requires the district court to (1) "make a preliminary determination as to whether sufficient evidence exists that the prior act occurred," (2) "make a determination as to whether the 'other act' is admissible for a

proper purpose under Rule 404(b)," and (3) "determine whether the 'other acts' evidence is more prejudicial than probative under Rule 403." *Id.* at 553.[4]

Other bad acts are probative and admissible if relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (citing Fed. R. Evid. 404(b)). This list is "neither exhaustive nor conclusive." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Our courts admit "spoliation evidence, including evidence that a defendant attempted to bribe . . . a witness," because such spoliation evidence shows "consciousness of guilt." *Id.*; *see also United States v. Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009). Poulsen's conviction in the Obstruction Case was supported by evidence of his attempts to pay Sherry Gibson to give favorable testimony. This evidence was not offered to prove Poulsen's character in conformity with this prior bad act but rather was offered as evidence of his consciousness of guilt. The district court was aware of this distinction and clearly stated how Poulsen's "prior acts" were admissible under Rule 404(b): "Evidence of witness tampering was admissible as an 'other purpose' under Rule 404(b) because it 'tends to establish consciousness of guilt without any inference as to the character of the spoliator.'" Because, as the district court recognized, evidence of Poulsen's "attempts to bribe Gibson to testify favorably at his fraud trial is probative of his consciousness of guilt," the evidence was admissible. We take no issue with this finding, and move on to the question of whether the district court abused its discretion in determining that the evidence was not impermissibly prejudicial.

Federal Rule of Evidence 403 excludes evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. We review a district court's

---

[4]Furthermore, the Sixth Circuit has noted that because spoliation evidence does not violate Rule 404(b), it is not subject to the three-prong inquiry. Thus, the district court need not make a finding that the acts underlying the Obstruction Case occurred. *See United States v. Smith*, 139 F. App'x 681, 686 (6th Cir. 2005) ("Further, because such [spoliation] evidence is not subject to Rule 404(b), it is also unnecessary for the district court to determine whether the threat actually occurred."). This is not at issue in this case because the parties do not debate the truth of the content of the evidence of obstruction, only the probative and prejudicial value of its admission.

403 balancing for abuse of discretion, and, giving the district court decision broad discretion, we "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (internal quotation marks omitted). In order to establish that the evidence should be excluded, it is not sufficient to suggest that the "legitimate probative force of the evidence" would result in damage to the defendant's case, but rather that the evidence would "tend[] to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *Bonds*, 12 F.3d at 567).

Poulsen argues that this evidence is prejudicial because it suggests his consciousness of guilt, but the district court found that "the probative value of a defendant's spoilation attempt is precisely that it indicates consciousness of guilt." Thus, "any inference that Poulsen's attempt to bribe Gibson evidences a guilty conscience is not unfair prejudice." Poulsen then suggests that the sheer volume of evidence presented from the Obstruction Case was enough to establish unfair prejudice. At trial, Poulsen's lawyer clearly objected to the presentation of obstruction evidence and also submitted that if it was to be presented, it should be presented with a limiting instruction. The district court ruled that a limiting instruction was unnecessary as such evidence was neither inadmissible under Rule 404(b) nor substantially outweighed by its prejudicial effect under Rule 403. The court duly noted Poulsen's counsel's objection to the introduction of the evidence and allowed him to make it a continuing objection, but the district court rejected the objection as it had already ruled that the evidence was probative as to Poulsen's consciousness of his guilt and not overly prejudicial. We grant the district court "'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989) (citing *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir. 1982)). Although the presentation of evidence from the Obstruction Case did extend through a rather large portion of the Securities Case trial, both the prosecution and defense spent similar, substantial time with the direct and cross examination of

Sherry Gibson on the facts of the Obstruction Case.**5**  Given the broad discretion we grant to the district court, we find that the district court did not abuse that discretion in admitting evidence from the Obstruction Case that was probative of Poulsen's consciousness of guilt—a proper ground on which to admit the evidence.

## C.

The next issue is whether the district court erred in admitting evidence of the loss amount suffered by NCFE investors.  On appeal, Poulsen argues that the government failed to prove a specific loss amount, that reference to the loss amount was prejudicial and confusing, and that Poulsen was not permitted to present evidence of other factors responsible for the loss amount.  Poulsen filed a pre-trial motion *in limine* "to exclude reference to conjectural loss amounts as irrelevant or, at minimum, confusing and unfairly prejudicial."  The district court denied Poulsen's request and admitted evidence regarding the loss amount with no clear objection from Poulsen's counsel at trial.

Generally, we review a district court's evidentiary rulings, including a ruling on a motion *in limine* on the introduction of certain evidence, for an abuse of discretion.  *Goosby*, 523 F.3d at 639.  Although Poulsen objected to the introduction of such evidence in his motion *in limine*, he failed to do so at trial.  In *United States v. Brawner*, 173 F.3d 966 (6th Cir. 1999), which has neither been overruled nor directly contradicted, we addressed "[t]he question of whether a party who has raised an evidentiary issue by motion *in limine* and lost must again object at trial in order to preserve appeal on the issue."  *Id.* at 970.  We held, "[I]f the trial court has made an explicit and definitive ruling on the record of the evidentiary issues to be decided, and has not indicated that the ruling is conditioned upon any other circumstances or evidence, then counsel need not renew the objection at the time the evidence is offered . . . in order to preserve the error for appeal."  *Id.*  The court then clarified this holding: "However, if the court's

---

**5**Poulsen's brief implies that over 700 pages of trial transcript were devoted to the recorded conversations evidencing his obstruction, but these pages mark the testimony of Sherry Gibson, an important witness to both the Securities Case as well as the Obstruction Case.  It appears that over 130 pages of the transcript involve the government's direct examination on the issues of the Obstruction Case, and over 130 pages involve Poulsen's counsel's cross examination.

ruling is in any way qualified or conditional, the burden is on counsel to raise objection to preserve error." *Id.*[6]

In Poulsen's case, the district court denied the motion *in limine* with respect to evidence of the loss amount:

> Defendant moves to exclude any reference to the amount of loss suffered by investors as a result of Defendant's alleged fraud as (1) irrelevant under Rule 401; and (2) too speculative to be admitted under Rule 403. In support of his motion, Defendant generally attacks the evidence of loss presented at his co-defendants['] trial as overly speculative without placing any specific loss calculation before the Court. The Government responds that it does not intend to introduce any evidence based on conjecture. It contends that any evidence of loss at trial will be supported by NCFE's own documents or corroborated by witnesses. Based on the Government's representations, the Court **DENIES** Defendant's Motion. Evidence of loss not based on conjecture is probative and admissible.

Whether such a ruling is "explicit and definitive" and in no way "qualified or conditional" is unclear. Thus, whether Poulsen needed to object[7] to preserve his claim for appeal under the abuse of discretion standard is unclear, but deciding this question

---

[6] A number of Sixth Circuit cases have cited *United States v. Kelly*, 204 F.3d 652 (6th Cir. 2000), for the proposition that "[i]n the absence of a contemporaneous objection we must apply a plain error standard of review [because] . . . a motion in limine does not preserve evidentiary questions for appeal." *United States v. List*, 200 F. App'x 535, 542 (6th Cir. 2006) (quoting *Kelly*, 204 F.3d at 655); *see also Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 728 (6th Cir. 2006) ("We have held that 'a motion in limine does not preserve evidentiary questions for appeal."); *United States v. Kimball*, 194 F. App'x 373, 376–77 (6th Cir. 2006) (declining to rule on whether the district court abused its discretion because the defendant failed to contemporaneously object at trial to preserve the objection made in his motion *in limine*); *United States v. McCutchen*, 150 F. App'x 517, 521 (6th Cir. 2005) (noting that *Kelly* held "that motions *in limine* do not preserve evidentiary objections for appeal; a contemporaneous objection is required"). *But cf. United States v. Harris*, 293 F.3d 970, 976 (6th Cir. 2002) (citing *Kelly* for the proposition that the district court's allowance of certain evidence after granting defendant's motion *in limine* to exclude such evidence was to be reviewed for plain error). These cases, however, do not give the full context of *Kelly*. In *Kelly*, although the defendant filed a pretrial motion *in limine*, the district court never ruled on this motion. 204 F.3d at 655. The court's decision in *Kelly* to apply plain error review does not conflict with the court's prior decision in *Brawner* that counsel need not renew an objection "if the trial court has made an explicit and definitive ruling on the record of the evidentiary issues to be decided." 173 F.3d at 970. Because the court in *Kelly* failed to rule on the motion *in limine* it never made such "an explicit and definitive ruling," and *Brawner* provides the more complete statement of the law. *See United States v. Finnell*, 276 F. App'x 450, 452–53 (6th Cir. 2008) (squaring the holding in *Kelly* with *Brawner*).

[7] Poulsen suggests that a long colloquy between counsel for Poulsen and the government and the district court, which was associated with the government's objection to his own attempt to introduce evidence of the cause of NCFE's downfall, demonstrated that Poulsen objected to the government's theory of losses, necessarily including the loss amount. The fact that the government objected to Poulsen's evidence, however, does not show that Poulsen objected to the government's evidence of the loss amount.

is unnecessary because our conclusion is the same under either an abuse of discretion or plain error standard of review.

Poulsen argues that the government's proof of the loss amount was tenuous and not substantiated and that the government constantly misstated the evidence of "billions of dollars of loss." Poulsen cites only one solitary mention by the prosecution of the scope of the loss during closing argument. Evidence at trial did indicate that billions of dollars were outstanding on investors' bonds. For the prosecutor to state, once, that the loss was "over $2 billion" was in keeping with trial evidence. Poulsen fails to show that the district court committed plain error or abused its discretion in allowing the prosecution to make this statement in its closing argument without an objection at trial from Poulsen.

Additionally, Poulsen argues that the district court erred in excluding his own testimony explaining the causes of the loss amount. The district court ruled that Poulsen was not a qualified expert and therefore could not testify about what actually caused the NCFE losses. Moreover, the court held that the amount of loss, and even the cause of the loss, is not a necessary element of a fraud case. Because this issue was immaterial, because the government had not set out to prove the cause of the loss, and because any defense based on the cause of the loss that did not rebut the fraudulent conduct itself would be both unnecessary and potentially misleading, the district court did not err by limiting the scope of Poulsen's testimony. The district court did allow Poulsen to testify about his personal experiences and did not foreclose the development of his defense. Excluding Poulsen's non-expert testimony about precisely what caused the losses, when the cause was not at issue, does not constitute error, so we uphold the district court's ruling under both the standards of abuse of discretion and plain error.

D.

Finally, Poulsen challenges his sentence in the Securities Case, arguing that the thirty-year sentence was arbitrary and unreasonable. Poulsen presents three arguments: that the sentence was (1) procedurally unreasonable because the court failed to properly evaluate the government's proof of losses, (2) procedurally improper because the district

court granted a variance without articulating reasons, and (3) substantively unreasonable because the district court failed to properly consider unwarranted sentencing disparities.

After *United States v. Booker*, 543 U.S. 220 (2005), we must review Poulsen's sentence under an abuse of discretion standard. *Gall*, 552 U.S. at 51. First, we assess whether the district court committed significant procedural error and, second, whether the sentence is substantively reasonable under the totality of the circumstances. *Id.*

1.

First, Poulsen argues that the court never substantiated the amount of losses suffered as a result of the fraud, rendering his sentence procedurally improper.[8] During the sentencing proceedings, the district court found that the amount of loss was $2,894,150,500. The loss amount was used to calculate the level of enhancement of Poulsen's fraud offense, and Poulsen was sentenced in the highest range of loss—greater than $400,000,000. *See* U.S.S.G. § 2B1.1.

Under *Gall*, a sentence constitutes procedural error if, for instance, the court failed to calculate the Guidelines range, selected the sentence based on clearly erroneous facts, or failed to adequately explain the sentence. 552 U.S. at 51. Poulsen focuses on whether the court correctly calculated the sentencing range under the Guidelines. Poulsen argues that the government produced no substantive evidence at trial or sentencing directly linking Poulsen to the loss amounts alleged in the PSR. The government counters that it did in fact present the necessary substantive evidence at trial to allow the court to rely on the loss amount.

We review the district court's factual "amount of loss" finding for clear error and consider the methodology behind it *de novo*. *See United States v. White*, 492 F.3d 380,

---

[8]The discussion of the underlying amount in the Securities Case is distinguishable from that in the Obstruction Case discussed *supra* in section II.C. Because the Obstruction Case dealt with a sentencing enhancement in which Poulsen need only have been aware of the circumstances of the underlying crime (*i.e.*, the loss allegations of more than $2 billion) in order to have his sentenced enhanced, it was not necessary to substantiate the loss allegations. Here, because Poulsen is challenging a sentence given for the actual fraud committed, his challenge to the loss allegation merits a closer look.

414 (6th Cir. 2007); *United States v. Jackson*, 25 F.3d 327, 330 (6th Cir. 1994).  Under Rule 32 of the Federal Rules of Criminal Procedure,

> At sentencing, the court: (A) may accept any undisputed portion of the presentence report as a finding of fact; (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . .

Fed. R. Crim. P. 32(3).  Therefore, if the amount of loss was in dispute, to avoid procedural error the district court must have ruled on the dispute or determined that a ruling was unnecessary.  The Sixth Circuit requires "literal compliance" with Rule 32, so when matters are contested the court must explain its calculation methods. *See United States v. Nelson*, 356 F.3d 719, 722–23 (6th Cir. 2004) (holding that the court erred by summarily adopting the factual findings of the PSR when the parties debated the point at which the defendant entered the fraud conspiracy and whether the defendant should be responsible for the alleged losses of his co-conspirators).  This explanation does not have to "establish the value of the loss with precision"; it simply needs to "publish the resolution of contested factual matters that formed the basis of the calculation." *Id.* at 723.  (quoting *United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997)).  Thus, our analysis proceeds as follows: (1) whether the amount was in dispute; (2) if it was in dispute, whether the district court adequately ruled on the disputed amount; and (3) if the district court ruled, whether the factual findings indicate clear error.

First we ask whether the amount was in dispute.  If so, either the government must prove the loss amount by a preponderance of the evidence, or the district court may conduct judicial factfinding to determine the loss amount. *See United States v. Barton*, 455 F.3d 649, 657–58 (6th Cir. 2006).  The court may not blindly accept the PSR, but "[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2001).  The government's burden is triggered when the defendant "produce[s] some evidence that calls the reliability or correctness of the alleged facts into question" that is more than a "bare denial." *United*

*States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003).  Here, the government does not suggest that Poulsen failed to place the PSR amount in dispute.

Second, we examine whether the district court ruled on the amount in dispute. If it did not, the finding is procedurally improper.  In order for this ruling to be sufficient, it must "publish the resolution of contested factual matters that formed the basis of the calculation." *See Monus*, 128 F.3d at 397.  If the ruling fails to make a factual finding regarding the loss amount, we vacate and remand for resentencing.  *See id.* at 396. Previous Sixth Circuit cases have vacated defendants' sentencing enhancements and remanded cases for failing to explain how the disputed amounts were calculated.  *See Nelson*, 356 F.3d at 723 (finding that the statement, "'I have had an opportunity to review the submissions by both the defendant and the government and I have concluded that the government is correct and that it is no longer necessary to go through the exercise of doing further research[,]' . . . gave no indication as to how it calculated the loss and determined that the government's calculations were correct nor did it respond to Nelson's specific objections"); *Monus*, 128 F.3d at 396–97 (finding that a statement from a court that it was "'convinced that the defendant is . . . at least responsible for in excess [of] 80 million dollars' . . . . did not explain how it calculated the amount of loss or respond to the defendant's specific factual objection to the methods of calculation").

Here, the sentencing hearing began with an effort to "resolve [Poulsen's] objections, . . . make factual findings, and then . . . make . . . determinations as to the applicable advisory guidelines range."  The district court clearly intended to follow the correct Rule 32 procedure.  In the discussion in which these objections were resolved, Poulsen's lawyer emphasized that "loss amounts were not proven at trial."  The government's attorney then stated that the government did not "commit to a particular loss figure at trial nor [was] [it] required to."  The court then correctly referenced its legal authority to "engage in judicial fact finding when calculating a defendant's sentence.  The Court determines the amount of losses stemming from criminal activity based on a preponderance of the evidence."

After this discussion, the district court stated:

> The government's investigation puts the total amount of investor loss in this case at $2,894,150,500. The PSR specifically lists 82 public and private institutional investors and the amount of money they each lost as a result of the fraud at National Century. Here the evidence at trial amply supports the PSR's loss calculation.
>
> First, the evidence established at the time of NCFE's collapse in November 2002, NPF VI had outstanding bonds totaling approximately $900 million, while the outstanding bonds in NPF XII equaled about $2 billion.
>
> In addition, the government's summary witness testified that in the four-year period between January 1, 1999 and December 31st, 2002, National Century made 1.3 billion in unsecured loans to eight health care providers. Accordingly, the Court finds that 2,894,150,500 is a fair estimate of the losses investors sustained in this case.

Though the district court did not address Poulsen's specific objections, it did state the factual reasons behind its acceptance of the government's loss calculations. The court was careful to correctly state the law as well as the factual foundation for its finding constituting a ruling on the dispute and meeting the requirements of Rule 32.

Third, we determine whether the district court committed clear error in finding that the loss amount was greater than $400 million. Poulsen argues first that *White* requires the court to adopt an "accepted method for calculating losses" and "*actually find facts . . .* by a preponderance of the evidence." 492 F.3d at 416 (emphasis in original). The court based its ruling on the calculation of loss made by the government that totaled the outstanding bonds of the company. This is not an unreasonable method or finding; thus, we reject Poulsen's first argument.

Next, Poulsen argues that the court should have considered other causes of the loss amount to deduce the loss amount caused only by Poulsen. To buttress this argument, Poulsen cites criminal cases from other circuits and civil cases from this circuit and the Supreme Court. Poulsen's citations are inapt. Poulsen argues, for instance, that *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), suggests that the government must prove that the offense proximately caused the relevant loss. But *Dura* was a civil case where the plaintiff had the burden of establishing proximate cause as a necessary element in a claim under the Private Securities Litigation Reform Act and

so does not inform our discussion.  *Id.* at 345–46.  Poulsen presents no case law from this circuit suggesting that other causes must be incorporated into a calculation of losses in a determination of a sentence.

Furthermore, testimony from the trial offered evidence of the loss amount: Gibson stated that the money that was "advanced" was lost because "if money's going out to a seller and a receivable is not being purchased, then money is not going to be collected and come back into the program"; Jessica Bily, a former employee of NCFE, said that the amount of overfunding was "over a billion dollars"; and Special Agent Williams testified that NCFE's financial records on August 31, 2002, indicated that $1.35 billion had been advanced in excess of the amount of NCFE's eligible receivables.[9] The government does not, however, discuss how these references from the trial prove what the district court found to be the exact amount loss of $2,894,150,500. Nonetheless, the district court held that Poulsen fit into the greater-than-$400,000,000 range of loss under U.S.S.G. § 2B1.1.  Every indication of loss presented by the government, and eventually settled on by the court, was well over the amount for which Poulsen's sentence was enhanced.  Even if Poulsen was responsible for a great deal less than the loss found at sentencing, it is extremely unlikely that he would fit into the less-than-$400,000,000 range.  *But cf. Monus*, 128 F.3d at 396–97 (finding that a statement from a court that it was "'convinced that the defendant is at least the minimum amount [sic], at least responsible for in excess [of] 80 million dollars . . .' did not explain how it calculated the amount of loss or respond to the defendant's specific factual objection to the methods of calculation," but also relying on the fact that the court had failed to put the finding in writing and had not provided reasoning of why the defendant was responsible for "in excess [of] 80 million dollars").

---

[9]Poulsen specifically objects to the use of Special Agent Williams's testimony regarding the government's estimation of the loss amount, objecting to the introduction of Williams's statements as "testimonial hearsay" in violation of *Crawford v. Washington*, 541 U.S. 36 (2004).  Testimonial hearsay, however, is admissible at sentencing if it bears "some minimum *indicia* of reliability,"  *United States v. Katzopoulos*, 437 F.3d 569, 574 (6th Cir. 2006), and thus Williams's statements involving the loss amount were not inadmissible testimonial hearsay.

Given that Poulsen's Securities Case produced evidence supporting the loss amount, that we have not explicitly adopted a means of calculating loss amount that requires incorporating other causes of loss, and that the district court made a reasonable ruling on the loss amount; we find that the sentence was not procedurally unreasonable and affirm the decision of the district court.

2.

Poulsen next argues that the sentence was procedurally improper because the district court granted a variance without articulating reasons. The court granted a downward deviation from the 1,440 months' imprisonment recommended by the Guidelines range to 360 months' imprisonment to run concurrently with his sentence in the Obstruction Case. Poulsen's argument has some merit, especially in light of the district court's discussion of the severity of Poulsen's crime, and the omission of an explanation may well constitute an error on the part of the district court. *See Gall*, 552 U.S. at 46 ("It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."). We choose, however, not to disturb the judgement because the supposed error benefits the defendant greatly. *See United States v. Erpenbeck*, 532 F.3d 423, 434 (6th Cir. 2008) (resolving not to disturb the district court's calculation of loss because it favored the defendant). We hardly see how articulation of the reasoning behind a ruling so favorable to Poulsen could improve his situation, and any error on this point is harmless and does not justify vacating the sentence and remanding for resentencing.

3.

Finally, Poulsen argues that his sentence was substantively unreasonable because the district court failed to properly consider unwarranted sentencing disparities. Poulsen submits that he should not have been compared to the CEOs of infamous companies such as WorldCom and Enron. He asserts that every defendant should receive an individualized assessment based upon the specific facts of his particular case.

Conversely, Poulsen cites a number of sentences given to those whom he refers to as "the most notorious financial fraudsters in corporate America." These defendants received shorter sentences for similar crimes. Poulsen inconsistently argues that he deserved individualized treatment and then compares himself to other corporate offenders. Poulsen presents no coherent argument as to why his sentence is substantively unreasonable. We affirm the district court's sentence in all respects.

## IV.

For the foregoing reasons, we affirm Poulsen's sentence and conviction.