[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15987
Non-Argument Calendar

_____

D. C. Docket No. 06-00121-CR-LSC-JEO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUSAIN ABDUL ALIM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 7, 2007)

Before DUBINA, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Husain Alim appeals his conviction and sentence for trafficking in counterfeit goods, in violation of 18 U.S.C. §§ 2320, 2322. We address the issues raised on appeal in turn.

## I.

Alim first contends the district court erred when it denied his motion to suppress after finding (1) the plain view exception to the Fourth Amendment's warrant requirement applied to a search of the first storeroom in his business and (2) he voluntarily consented to a search of the second storeroom. "Review of a district court's denial of a motion to suppress is a mixed question of law and fact." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006), *cert. denied* 127 S. Ct. 990 (2007). When properly preserved, we review a district court's factual findings for clear error, and construe those facts in the light most favorable to the prevailing party.[1] *Id.* We review the district court's application of law *de novo. Id.*

The Fourth Amendment protects "[t]he right of the people to be secure against unreasonable searches and seizures." U.S. CONST. AMEND. IV. A search

---

[1] Under Fed. R. Crim. P. 59(b), a defendant's failure to object to a magistrate's order recommending denial of suppression within ten days of being served with a copy of the recommended disposition "waives a party's right to review." *See* Fed. R. Crim. P. 59(b)(2). We assume *arguendo*, particularly since the government did not argue to the contrary, that Alim's objection, filed in response to the district court's order adopting the magistrate's report and recommendation denying suppression, although untimely, was sufficient to preserve for appellate review issues with respect to the denial of his suppression motion.

2

generally is reasonable under the Fourth Amendment when it is supported by a warrant or when the search falls within an established exception to the warrant requirement. *United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006). One such exception, the "plain view" doctrine, allows a warrantless seizure where "(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *Smith*, 459 F.3d at 1290. For an item's incriminating character to be "immediately apparent," the police merely need probable cause to believe that the item is contraband. *Texas v. Brown*, 103 S. Ct. 1535, 1542-43 (1983). Probable cause, in turn, "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . . ; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required." Id. at 742 (internal quotations and citations omitted).

The district court did not err in finding that the warrantless search of the first storeroom was constitutional under the "plain view" exception to the Fourth Amendment's warrant requirement. Although federal authorities, including a Customs official (Wesley Anthony) and an official trained in identifying

3

counterfeit items (Wayne Grooms), were not in possession of a warrant when they entered Alim's business, it was undisputed that they were lawfully located in the retail area of the business when they viewed counterfeit merchandise in the first storeroom through a window.

Moreover, the incriminating character of the merchandise in the first storeroom was "immediately apparent." Anthony and Grooms had probable cause to believe that the merchandise was contraband in light of the uncontroverted testimony at the suppression hearing that: (1) Grooms had twenty years of experience in identifying counterfeit products, and had received training from various trademark holders in identifying fake products; (2) Grooms was able to identify visually some of the counterfeit merchandise; (3) Grooms already had observed a large volume of counterfeit merchandise in the retail area; and (4) Anthony and Grooms both believed, based on their visual observations, that the merchandise in the first storeroom was "consistent and the same type of merchandise [for sale in the retail area] which . . . had already been determined to be counterfeit."

Accordingly, the "plain view" exception to the Fourth Amendment's warrant requirement applied, and the warrantless search of the first storeroom and corresponding seizure of the counterfeit merchandise in that storeroom were

4

constitutional. *See Smith*, 459 F.3d at 1290 (enumerating "plain view" test); *Brown*, 103 S. Ct. at 1542-43 (noting that probable cause satisfies the "immediately apparent" requirement of the "plain view" test).

Voluntary consent provides another exception to the warrant requirement of the Fourth Amendment. *Schneckloth v. Bustamonte*, 93 S. Ct. 2041 (1973). A district court's determination as to the voluntariness of a person's consent to a search is a factual finding that will not be disturbed absent clear error. *See United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). "In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances. . . . In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." *Id*. "[T]he absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent." *United States v. Jones*, 475 F.2d 723, 730 (5th Cir. 1973).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cie. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close

Consent is not voluntary if it is "a function of acquiescence to a claim of lawful authority . . . ." *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). Rather, "[t]o be considered voluntary, consent 'must be the product of an essentially free and unconstrained choice.'" *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999) (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir.1989)).

We found an absence of undue coercion where a defendant was arrested at gunpoint and forced to lie on the ground near the roadway, and the defendant consented to the search of his car and suitcase while the officer still had his gun drawn. *See United States v. Espinosa-Orlando*, 704 F.2d 507, 513 (11th Cir. 1983). We also determined that a defendant's consent to a search of his home was voluntary, where his home was surrounded by fourteen agents, he was handcuffed, and the officers refused his consent to a limited search of his home. *See Garcia*, 890 F.2d at 360-61.

The district court did not clearly err in finding that, in light of the totality of the circumstances, Alim voluntarily consented to the search of the second storeroom in the business.[3] Alim did not offer any testimony at the suppression

of business on September 30, 1981.

[3] Because Alim orally consented to a search of the business premises after the search of the retail area and during the search of the first storeroom, and those searches were legal, we need only address whether the consent was voluntary, without regard to whether the consent was tainted by

hearing to show that the circumstances surrounding the search of his business were unduly coercive, and the testimony from the suppression hearing belies such an argument. Alim refused to execute the preprinted consent-to-search form at the same time that he provided his oral consent to a search of the business premises (excluding his "personal area"), thus, demonstrating that he was not merely acquiescing to the actions of the officers.

Moreover, even assuming *arguendo* that the assertion by one of the officers that they had probable cause to search the first storeroom could be construed as a claim of lawful authority, *cf. Blake*, this statement was limited to the first storeroom, and the officers did have the lawful authority to search that storeroom. It is significant that the officers were not even aware of the existence of the second storeroom at the time this statement was made to Alim, and there is no record evidence to suggest that any claim of lawful authority was made with respect to the second storeroom when Alim consented to a search of the entire business premises (excluding his "personal area").

Also, Anthony specifically testified that: (1) Alim was a United States

---

an initial illegality. *See United States v. Ramirz-Chilel*, 289 F.3d 744, 752, n.9 (11th Cir. 2002). This fact distinguishes the present case from the decision relied on by Alim, *Florida v. Royer*, 103 S. Ct. 1319 (1983), where the Supreme Court concluded that a defendant had been illegally detained when he gave his consent, and so "the consent was tainted by the illegality and was ineffective to justify the search."

citizen and appeared to understand that he and the other investigator were asking for his consent to search the building; (2) both his and the investigator's guns were concealed during that conversation; (3) no one threatened Alim to obtain his oral consent; (4) Alim was not promised anything for his oral consent; and (5) Alim's movement was not restricted at any time. In this respect, this environment may be reasonably viewed as less coercive than in *Espinosa-Orlando*, where the defendant provided consent at gunpoint, or in *Garcia*, where the defendant was handcuffed at the time he provided his consent. *See Espinosa-Orlando*, 704 F.2d at 513; *Garcia*, 890 F.2d at 360-61.

Finally, although there were more officers present during the search of Alim's business than during the search of the defendant's premises in *Garcia*, we do not view this as sufficient to affect the outcome of this case.

Accordingly, in light of the totality of the circumstances, the district court's conclusion that Alim voluntarily consented to the search of the second storeroom was not clearly erroneous.

## II.

Alim next argues the court erred by determining the amount of loss for sentencing purposes based on the retail value of the infringed items rather than the retail value of the counterfeit items. "Interpretation of the Sentencing Guidelines is

8

reviewed <u>de novo</u>, with factual findings reversible if clearly erroneous." *United States v. Guerra*, 293 F.3d 1279, 1291 (11th Cir. 2002). "Review of the district court's application of the Guidelines to the facts is for abuse of discretion." <u>Id.</u>

A defendant who is convicted of violating 18 U.S.C. § 2320 is sentenced pursuant U.S.S.G. § 2B5.3. According to that Guideline, "[i]f the infringement amount . . . exceeds $5,000," a court is instructed to "increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction and Fraud) corresponding to that amount." U.S.S.G. § 2B5.3(b)(1). To determine the infringement amount, the commentary to § 2B5.3 instructs a court is to use "the retail value of the *infringed* item, multiplied by the number of infringing items," if the case involves, among other categories, an infringing item that "is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item[.]" U.S.S.G. § 2B5.3, cmt. n.2(A)(i) (May 2000 amendments) (emphasis added). In a case not covered by one of the enumerated categories in the commentary notes, the infringement amount "is the retail value of the *infringing* item, multiplied by the number of infringing items[.]" U.S.S.G. § 2B5.3, cmt. n.2(B) (May 2000 amendments) (emphasis added).

The district court did not clearly err at sentencing in finding that a reasonably informed purchaser would believe that the infringing items were

9

substantially equivalent to the genuine items, and so the retail value of the *infringed* items, rather than of the *infringing* items, should be used to calculate Alim's offense level. Alim's only evidence on this point came from his stepson, Ibrahim, who testified that they sold the counterfeit items for substantially less than the retail values of the genuine items. Ibrahaim also testified, however, that he worked at the business and was unable to tell that the confiscated merchandise was counterfeit. Furthermore, Grooms testified at sentencing that he was personally familiar with the counterfeit items seized from Alim's business and the genuine versions of those items, and that a reasonably informed buyer would believe that the items were the substantial equivalents of one another.

Because this testimony supports the district court's factual finding that the counterfeit items would appear to a reasonably informed purchaser to be substantially equivalent to the genuine versions of the items, the district court was instructed by the Guidelines to use the retail value of the infringed items. *See* U.S.S.G. § 2B5.3, cmt. n.2(A) (May 2000 amendments). Accordingly, the district court did not err in this regard.[4]

_____

[4] We also reject Alim's argument that the district court failed to articulate its reasoning for using the retail value of the infringed items to calculate his offense level. The district court listened to the parties' arguments and testimony on the matter, and then expressly adopted the factual findings of the PSI, which noted, among other things, that "the counterfeit items [were] substantially equivalent to the actual items . . . ."

## III.

The district court did not err in (1) finding the plain view exception to the Fourth Amendment's warrant requirement applied to a search of the first storeroom, (2) finding that Alim voluntarily consented to a search of the second storeroom, and (3) calculating Alim's offense level for sentencing purposes. Thus, we affirm Alim's conviction and sentence.

**AFFIRMED.**