NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0823n.06

No. 13-3121

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 10, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TRANG DOAN HOANG, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant – Appellant. | ) | |
| | ) | |
| | ) | |

**Before: GIBBONS, WHITE, Circuit Judges; GREER, District Judge[*]**

**JULIA SMITH GIBBONS, Circuit Judge.** Trang Hoang pled guilty to trafficking in counterfeit trademarks. The district court sentenced her to four months' imprisonment and two years of supervised release. On appeal, Hoang argues that the district court's sentence was procedurally unreasonable because it used the retail value of the infringed items (*i.e.*, the genuine items) to calculate the infringement amount in determining her advisory sentencing range under the U.S. Sentencing Guidelines. For the reasons stated below, we reverse the district court's sentence and remand with instruction to calculate the infringement amount using the retail value of the infringing items (*i.e.*, the counterfeit items).

I.

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

-1-

*United States v. Trang Hoang*, No. 13-3121

In September 2011, a North Kingsville police officer observed counterfeit handbags inside the home of Quoc-Thang Mgo Mai and Trang Hoang while investigating an unrelated matter. A few months later, federal agents working undercover purchased three counterfeit handbags from Hollywood Nails in Ashtabula, Ohio, which is owned by Mai and Hoang. The handbags were labeled as Coach, Burberry, and Louis Vuitton. The trademark holders confirmed that the handbags were counterfeit. In February 2012, federal agents executed a search warrant for Mai and Hoang's home and Hollywood Nails. Agents seized approximately 120 handbags and forty-three wallets. The plea agreement states that an additional twenty-six handbags were seized. Six of those were genuine handbags, and twenty "did not contain trademarks or logos or were personal items which had not been offered for sale to the public."

A federal grand jury charged Mai and Hoang with trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a). On November 6, 2012, Hoang pled guilty to this charge. In the written plea agreement, the parties stipulated that a base offense level of 8 applied under U.S.S.G. § 2B5.3. The parties did not agree to an infringement amount, and Hoang reserved the right to appeal the district court's determination of this amount. The parties agreed that, according to the trademark owners, "the retail value of the 120 handbags and 43 wallets in question, if genuine, is between $30,000.00 and $70,000.00."

The U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). The probation officer applied the 2012 U.S. Sentencing Commission Guidelines Manual and calculated that the infringement amount was more than $30,000 but less than $70,000. Therefore, the probation officer increased the base offense level by 6 levels, pursuant to the table in U.S.S.G.

§ 2B1.1(b)(1)(D). The probation officer applied an adjustment for acceptance of responsibility and arrived at a total offense level of 12.

Hoang objected to the probation officer's calculation of the infringement amount. She recognized that the court should use the retail value of the infringed items when the infringing items appear to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items. However, Hoang argued that a reasonably informed purchaser would not believe the items she sold were genuine based on "obvious imperfections" on many of the items and their low prices. Hoang filed a sentencing memorandum and exhibits prior to the sentencing hearing. She included photographs of items seized and noted their imperfections. Hoang also submitted letters from the trademark holders explaining the ways in which the counterfeit items were inferior to the genuine items. Finally, Hoang provided photographs of the items she offered for sale with their price tags on them, showing that they ranged in price from $22 to $60. The government did not respond to Hoang's memorandum prior to the sentencing hearing.

At the sentencing hearing, Hoang's counsel argued that the district court should calculate the infringement amount by applying the retail value of the counterfeit items because the exhibits she submitted show that the items Hoang sold were of obviously inferior quality. In response, the government acknowledged that some of the seized handbags were damaged, but noted that they had been taken out of the infringement amount calculation. The government asserted that one of Hoang's exhibits included photographs of these damaged handbags. Hoang's counsel responded that five or six damaged handbags not included in the infringement amount calculation were mistakenly included within an exhibit, but did not specify which ones. As further support for her position,

Hoang's counsel pointed out that some of the trademark owners said that the counterfeit items did not resemble styles sold by the manufacturer, "[s]o that someone who knew what they were looking for clearly would not think that these were genuine items." She concluded by stating that:

> you have a situation where these bags are being sold for $50 out of the back room of a nail salon, whereas the genuine articles are sold in high end retail stores for upwards of a thousand dollars, according to the verifications. So it's pretty clear that anybody who knew what they were looking for is not going to think these 50-dollar bags are genuine articles. And to use the retail value of the genuine items, it would seriously overstate the pecuniary value and the seriousness of the offense in this situation.

The district court responded:

> I'll overrule the objection. . . . I'm influenced in this, there were apparently, as indicated in paragraph 12 of the presentence report, there were at least six genuine handbags that were apparently mixed within this group of bags, and so I think    well, it suggests to me that they were not so distinguishable that anybody reasonably would have detected that they were not trademarked items.
>
> Just simply beyond that, your argument in major part seems to rely upon just a simple argument that because they were offered at a price significantly below what the trademark, that no one would confuse them, and I don't think that necessarily follows. I mean, there could have been a belief by the consumer that the bags had been stolen or the consumer could have otherwise just simply believed that the markup was so unbelievably extreme, so I'll overrule the objection to paragraph 21 [of the PSR, which calculated the infringement amount based on the value of the infringed items].

Hoang's counsel replied that many of the genuine handbags were Hoang's personal items that were not for sale. The district court asked the government whether the genuine handbags were separate from the other handbags. The government responded that, according to the agent, they were all together. The agent, however, was not called to testify. The district court restated that it was overruling Hoang's objection. It then determined that the base offense level was 8 and increased the offense level by 6 levels because it found that the infringement amount was between $30,000 and

$70,000. The district court arrived at a total offense level of 12 and a criminal history category of I. This resulted in a guidelines range of 10 to 16 months' imprisonment. After considering the § 3553(a) factors, it sentenced Hoang to four months' imprisonment and two years of supervised release. The district court explained that it imposed a below-Guidelines sentence because Hoang did not have a criminal history.

## II.

Hoang argues that the district court's use of the retail value of the infringed items to calculate the infringement amount rendered her sentence procedurally unreasonable. First, Hoang argues that the district court did not hold the government to its burden to prove the infringement amount by a preponderance of the evidence. Second, Hoang argues that the evidence presented at the sentencing hearing shows that the infringing items would not have appeared to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items.[**]

We review the procedural and substantive reasonableness of the district court's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court commits reversible procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,

---

[**] Although Hoang completed her term of imprisonment, her appeal is not moot because it "potentially implicates" the length of her two-year term of supervised release. *United States v. Maken*, 510 F.3d 654, 656 n.3 (6th Cir. 2007) (internal quotation marks omitted). The supervised-release term for Hoang's offense was not required by statute. Given the advisory nature of the supervised-release sentencing guidelines, *see United States v. O'Georgia*, 569 F.3d 281, 288 (6th Cir. 2009), the district court would have discretion to eliminate or modify Hoang's term of supervised release upon resentencing. *See United States v. Genschow*, 645 F.3d 803, 812 (6th Cir. 2011); *Maken*, 510 F.3d at 656 n.3.

selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* When a defendant alleges that the district court's infringement amount finding was erroneous, we review the district court's methodology *de novo* and its factual findings for clear error. *See United States v. Poulsen*, 655 F.3d 492, 512 (6th Cir. 2011) (using these standards to review the district court's "amount of loss" finding under U.S.S.G. § 2B1.1). "A factual finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008) (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)).

> Federal Rule of Criminal Procedure 32 states that at sentencing the court:
>
> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>
> (B) must    for any disputed portion of the presentence report or other controverted matter    rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing[.]

Fed. R. Crim. P. 32(i)(3). "When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *Poulsen*, 655 F.3d at 513 (internal quotation marks, citation, and alteration omitted). However, if the defendant produces some evidence calling into question the reliability or correctness of facts in the PSR, the government must prove those facts by a preponderance of the evidence. *Id.*

Under U.S.S.G. § 2B5.3, a base offense level of 8 applies to criminal infringement of copyright or trademark. If the infringement amount exceeds $5,000, then the district court must increase the offense level by the number of levels from the table in § 2B1.1 corresponding to that amount. U.S. Sentencing Guidelines Manual § 2B5.3 (2012). Under § 2B1.1(b)(1)(D), the offense

*United States v. Trang Hoang*, No. 13-3121

level should be increased by 6 levels if the loss amount is more than $30,000 but less than $70,000. *Id.* at § 2B1.1(b)(1)(D).

The "infringed item" is "the copyrighted or trademarked item with respect to which the crime against intellectual property was committed." *Id.* at § 2B5.3 cmt. n.1. The "infringing item" is "the item that violates the copyright or trademark laws." *Id.* There are eight situations in which the infringement amount is the retail value of the infringed items, multiplied by the number of infringing items. *Id.* at cmt. n.2(A). One of those instances is where "[t]he infringing item . . . is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item." *Id.* at cmt. n.2(A)(i). In addition, the retail value of the infringed item should be applied when "[t]he retail price of the infringing item is not less than 75% of the retail price of the infringed item" and when "[t]he retail value of the infringing item is difficult or impossible to determine without unduly complicating or prolonging the sentencing proceeding." *Id.* at cmt. n.2(A)(ii)-(iii). In all other circumstances, "[t]he infringement amount is the retail value of the infringing item, multiplied by the number of infringing items." *Id.* at cmt. n.2(B). The "retail value" is "the retail price of that item in the market in which it is sold." *Id.* at cmt. n.2(C). When there are a variety of infringing items, the infringement amount is the sum of all calculations made using either the retail value of the infringed item or the retail value of the infringing item, whichever is appropriate. *Id.* at cmt. n.2(D).

> For example, if the defendant sold both counterfeit videotapes that are identical in quality to the infringed videotapes and obviously inferior counterfeit handbags, the infringement amount . . . is the sum of the infringement amount calculated with respect to the counterfeit videotapes [using] the quantity of the infringing videotapes multiplied by the retail value of the infringed videotapes . . . and the infringement amount calculated with respect to the counterfeit handbags [using] the quantity of the infringing handbags multiplied by the retail value of the infringing handbags.

*United States v. Trang Hoang*, No. 13-3121

*Id.*

The Guidelines' current methodology for calculating the infringement amount first appeared in the 2001 U.S. Sentencing Guidelines Manual. *See* U.S. Sentencing Guidelines Manual § 2B5.3 (2012), Historical Notes, 2000 Amendments. Prior to that, the Guidelines instructed courts to calculate the infringement amount using the retail value of the infringing items in all circumstances. *See* U.S. Sentencing Guidelines Manual § 2B5.3 (2000). The amendment came in response to the No Electronic Theft Act of 1997, which directed the Commission "to ensure that the applicable guideline range for intellectual property offenses . . . is sufficiently stringent to deter such a crime" and to "provide for consideration of the retail value and quantity of the items with respect to which the intellectual property offense was committed." U.S. Sentencing Guidelines Manual § 2B5.3 (2012), Historical Notes, 2000 Amendments. The Commission explained:

> Prior to this amendment, the monetary calculation for all intellectual property crimes was based on the retail value of the infringing item multiplied by the quantity of infringing items. In response to the directive, the Commission refashioned this enhancement so as to use the retail value of the infringed item, multiplied by the number of infringing items, as a means of approximating the pecuniary harm for cases in which that calculation is believed most likely to provide a reasonable estimate of the resulting harm. Use of that calculation is believed to provide a reasonable approximation for those classes of infringement cases in which it is highly likely that the sale of an infringing item results in a displaced sale of the legitimate, infringed item.
>
> The amendment also requires that the retail value of the infringed item, multiplied by the number of infringing items, be used in certain other cases for reasons of practicality.
>
> However, based upon a review of cases sentenced under the former § 2B5.3 over two years, the Commission further determined that using the above formula likely would overstate substantially the pecuniary harm caused to copyright and trademark owners in some cases currently sentenced under the guideline. For those cases, a one-to-one correlation between the sale of infringing items and the displaced

sale of legitimate, infringed items is unlikely because the inferior quality of the infringing item and/or the greatly discounted price at which it is sold suggests that many purchasers of infringing items would not, or could not, have purchased the infringed item in the absence of the availability of the infringing item. The Commission therefore determined that, for these latter classes of cases . . . the retail value of the infringing item, multiplied by the number of those items, provides a more reasonable approximation of lost revenues to the copyright or trademark owner, and hence, of the pecuniary harm resulting from the offense.

*Id.*

Few cases discuss the "reasonably informed purchaser" standard under § 2B5.3. In *United States v. Alim*, 256 F. App'x 236 (11th Cir. 2007), the Eleventh Circuit held that the district court did not clearly err in finding that a reasonably informed purchaser would believe that the infringing items were substantially equivalent to the genuine items. *Alim*, 256 F. App'x at 240. The court noted that the only evidence submitted by the defendant was testimony from his stepson that they sold the counterfeit items for substantially less than the genuine items. *Id.* In addition, a federal official trained in identifying counterfeit items testified at sentencing that "he was personally familiar with the counterfeit items seized from [defendant's] business and the genuine versions of those items, and that a reasonably informed buyer would believe that the items were the substantial equivalents of one another." *Id.* at 240 41. The court did not identify the counterfeit items. Similarly, the Fifth Circuit affirmed the district court's use of the retail value of the infringed items "[b]ased on expert testimony that the infringing items would have appeared to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items." *United States v. Park*, 373 F. App'x 463, 464 (5th Cir. 2010).

The district court's sentence was procedurally unreasonable because it failed to hold the government to its burden to prove the infringement amount by a preponderance of the evidence. In

addition, to the extent that the government relied on evidence that Hoang submitted, that evidence does not support a finding that the infringing items would have appeared to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items.

Hoang objected to the infringement amount recommended by the probation officer. Along with her objection, Hoang produced photographs of some of the handbags and wallets, pointing out their imperfections; letters from the trademark holders explaining the differences between their products and the ones sold by Hoang; and photographs of the items for sale, including their price tags. Although Hoang conceded that five or six of the items photographed had not been included in the government's infringement amount calculation, the exhibit included photographs of at least sixteen different handbags and wallets.

Hoang's production of evidence triggered the government's burden to prove the infringement amount by a preponderance of the evidence. *Poulsen*, 655 F.3d at 513. But the government did not produce any evidence at the sentencing hearing. Unlike the prosecution in *Alim* and *Park*, the government did not call any expert witnesses to testify that the infringing items would have appeared to a reasonably informed purchaser to be substantially equivalent to the infringed items. *Park*, 373 F. App'x at 464; *Alim*, 256 F. App'x at 240 41. Nor did the government provide any physical or testimonial evidence at the sentencing hearing in response to Hoang's objection.

The district court overruled Hoang's objection to the infringement amount for two reasons: (1) the fact that six genuine handbags were "mixed within" the counterfeit items "suggests . . . that [the counterfeit items] were not so distinguishable that anybody reasonably would have detected that they were not trademarked items"; and (2) a consumer could have believed that the handbags were

stolen or that the markup on the genuine handbags was "unbelievably extreme." Neither of these reasons is supported by any evidence in the record. Although Hoang admits that six genuine handbags were seized, she claims that they were seized from her home and were her personal items that were not offered for sale. The government did not provide any evidence regarding where its agents seized these handbags. The district court's speculation that a consumer could believe that the handbags were stolen or that their prices had not been marked up was not based on any evidence or even argument by the government.

To the extent that the government relied on Hoang's evidence to carry its burden of proof, the district court erred because that evidence does not support the district court's use of the retail value of the infringed items. The Sentencing Commission enumerated eight circumstances under which courts should apply the retail value of the infringed items. U.S. Sentencing Guidelines Manual § 2B5.3 cmt. n.2(A) (2012). The one relevant to this case is where the infringing items appear to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items. *Id.* at cmt. n.2(A)(i). In establishing these eight circumstances, the Sentencing Commission explained that use of the retail value of the infringed item is appropriate where it is highly likely that the sale of an infringing item displaces the sale of a legitimate, infringed item or where it is impractical to apply the retail value of the infringing item. *Id.* at Historical Notes, 2000 Amendments. In cases where displacement is unlikely "because the inferior quality of the infringing item and/or the greatly discounted price at which it is sold" suggests that people who bought the infringing item would not have bought the infringed item, the retail value of the infringing item should be applied. *Id.* The Sentencing Commission's focus on displacement indicates that when

determining whether the infringing items are substantially equivalent to the infringed items, the context in which the items are sold is relevant.

Here, the evidence shows that the counterfeit handbags and wallets sold by Hoang would not have appeared to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items. The photographs submitted by Hoang reveal that items she sold were scratched and stained. Some of the labels on handbags had crooked stitching and stamping and misspelled words. Other labels were glued on, as opposed to stitched. A number of items looked used and dirty. Two of the trademark holders, Jimmy Choo and Gucci, represented that the handbags sold by Hoang did not resemble any style of their genuine products. In addition, Hoang's handbags and wallets were offered for sale at prices significantly below the prices of the genuine items. It is conceivable that a customer could think that a purported designer handbag is inexpensive because it was stolen or because the seller did not mark up the price. However, it is far more likely that a customer would believe that a low price on a purported designer handbag means that it is fake. Hoang sold her products at Hollywood Nails in Ashtabula, Ohio. According to the trademark holders, their products are only sold at the trademark holders' stores and other high-end retailers. Some of Hoang's pictures show the handbags stored in plastic wrap. Jimmy Choo and Gucci explained that their products are not wrapped in plastic, and Louis Vuitton and Prada stated that Hoang's handbags were not packaged in the same manner as the genuine items. Finally, photographs submitted by Hoang show the items for sale in what appears to be a backroom or a utility closet, with each handbag hanging by a tack. Genuine designer items offered for sale for hundreds and even thousands of dollars are not sold in this manner. Based on the evidence presented at the sentencing hearing, the handbags and wallets

sold by Hoang would not have appeared to a reasonably informed purchaser to be identical or substantially equivalent to the infringed items. As a result, the district court clearly erred by applying the retail value of the infringed items in calculating the infringement amount. We remand this case to the district court with instruction to apply the retail value of the infringing items to determine the infringement amount. On remand, the parties may present evidence of the retail value of the infringing items.

III.

For the foregoing reasons, we reverse the district court's sentence and remand for resentencing.