*5RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0034P (6th Cir.)
File Name: 04a0034p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

 v.                                   No. 02-2022

WALTER NELSON,
 *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-80583—Lawrence P. Zatkoff, Chief District Judge.

Argued: October 21, 2003

Decided and Filed: January 28, 2004

Before: MARTIN and SUTTON, Circuit Judges; MILLS, District Judge.*

———————————

 * The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

———————————

### COUNSEL

**ARGUED:** Paul D. Muller, Farmington, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Paul D. Muller, Farmington, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————————

### OPINION

———————————

 BOYCE F. MARTIN, JR., Circuit Judge. This case was presented as part of a consolidated appeal with *United States v. Sims*, No. 02-1734, which will be discussed in a separate opinion. In this case, Walter Nelson appeals his sentence following his guilty plea conviction for identity theft and bank and mail fraud. For the following reasons, we affirm the district court's sentencing decision in part and vacate in part.

I.

 On August 8, 2001, Walter Nelson was named in a thirty-two count indictment for various offenses including conspiracy to commit federal crimes, identity theft, bank and credit card fraud, and mail fraud. Nelson entered a plea of not guilty on all counts. On December 6, Nelson was named in a forty-four count first superseding indictment that named him in four additional charges and added four defendants. Nelson pleaded not guilty to all counts contained in the superseding indictment and was released on bond.

 All charges against Nelson arose from a large-scale fraud scheme in which Nelson played an active role. Nelson stole personal information of individuals from mortgage applications they filed at his places of employment and sold

that information to his co-conspirators, Vanessa Phillips and Tanisha Hollman, and others. For his part, Nelson demanded payment upon receipt of the information as well as a one-third share of any proceeds attributable to his theft. Thereafter, Nelson apparently began his own operation and recruited others to assist him in fraudulently adding authorized users to existing credit card accounts and then intercepting the cards upon their shipment.

On January 30, 2002, while on release for the charges contained in the first superseding indictment, Nelson was arrested after a traffic stop uncovered an open beer can underneath Nelson's seat. Upon Nelson's removal from the police vehicle, the authorities discovered paperwork containing the names, dates of birth, social security numbers and addresses of several individuals. On February 1, a warrant was issued to search Nelson's vehicle and a search revealed paperwork containing the personal information of over sixty individuals.

Because of these new offenses, on March 7, 2002, a second superseding indictment was issued against Nelson that added five defendants. On March 15, Nelson pleaded not guilty to all counts charged in the second superseding indictment. On May 7, however, Nelson changed his plea to guilty of conspiracy to commit federal crimes, bank fraud, identity theft, mail fraud and credit card fraud, in return for the United States' dismissal of several charges. The parties did not enter into a written Rule 11 plea agreement. Nelson was sentenced to seven years, three months and one day imprisonment, which included a two level reduction in his offense level for acceptance of responsibility, a fourteen level increase for committing conduct which resulted in more than $400,000 in losses pursuant to United States Sentencing Guideline section 2B1.1(b)(1)(H), and a one-day consecutive sentence for committing an offense while on release in violation of 28 U.S.C. § 3147. Nelson filed a timely notice of appeal.

On appeal, Nelson challenges his sentence on two grounds. First, Nelson argues that the district court erred when it granted him a two level decrease in his offense level for acceptance of responsibility instead of a three level decrease. Second, Nelson argues that the district court erred in finding him responsible for more than $400,000 in losses for his fraudulent activities pursuant to section 2B1.1(b)(1)(H) of the Sentencing Guidelines. Each of these arguments will be addressed in turn.

II.

A.

Sentencing Guideline section 3E1.1(a) grants sentencing courts discretion to reduce by two levels the offense level for the defendant who has "demonstrate[d] acceptance of responsibility for his [or her] offense." Additionally, pursuant to section 3E1.1(b), a district court may award an additional one level reduction in the offense level of a defendant who has demonstrated "super acceptance" of responsibility by either "(1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently."[1] Nelson argues that he should have

---

[1] Congress's recent enactment of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act, Pub. L. No. 108-21, 117 Stat. 650 (2003) ("PROTECT Act"), has changed the law with respect to the defendant's entitlement to the additional adjustment of a one level decrease in offense level. Under the PROTECT Act the additional one level adjustment may only be granted upon the prosecutor's motion at the pretrial stage. *See* PROTECT Act, Pub. L. No. 108-21, § 401(g)(1)(A). Because, as discussed, we conclude that Nelson was not entitled to the additional adjustment even under prior law, we find it unnecessary to decide the question of whether this new provision would apply to a case pending review at the time of the PROTECT Act's enactment.

received this additional reduction in his offense level because he informed the United States in a timely fashion of his intent to plead guilty. We disagree.

Nelson's appeal presents a simple argument–he met the guilty plea cut-off date and therefore should have received the additional one level decrease in his offense level. That argument, however, ignores the policy reason behind such a departure. As explained in the Guideline itself and expounded upon in the application notes following the Guideline, such a departure is warranted where the defendant's timely actions spared the government the expense of trial preparation. U.S.S.G. § 3E1.1(b)(2). The "timely actions" that merit the additional one level decrease generally occur very early in the case. U.S.S.G. § 3E1.1 (Application Note 6) ("In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case.").

In determining whether the district court erred by granting only a two level departure for Nelson's acceptance of responsibility, we consider Nelson's unlawful actions taken after his initial indictment relevant to our inquiry. *See United States v. Harper*, 246 F.3d 520, 525-27 (6th Cir. 2001) (allowing consideration of all of the defendant's post-indictment behavior in determining whether the district court erred in denying an acceptance of responsibility departure), *rev'd on other grounds*, *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). Upon examination of the record, we conclude that the district court did not err in granting Nelson a two level reduction for his acceptance of responsibility, rather than a three level reduction.

Nelson indicated his intention to plead guilty only after the United States expended considerable resources to investigate his role in the large-scale conspiracy. Indeed, Nelson's refusal to accept responsibility and his demand for a trial caused an extensive investigation that not only required the issuance of a first superseding indictment, but also a second

superseding indictment. As the United States noted at Nelson's sentencing hearing, Nelson's belated acceptance of responsibility for his criminal actions caused its "investigation to continue," forced the expenditure of an "incredible" amount of resources, and simply did not "spare[ the government] any work." Thus, we affirm the decision of district court granting Nelson only a two level reduction in his offense level for his acceptance of responsibility.

B.

Next, we address Nelson's argument that the district court erred in finding him responsible for more than $400,000 in damages, which resulted in a fourteen level increase in his offense level pursuant to section 2B1.1(b)(1)(H) of the Sentencing Guidelines.

On August 1, 2002, at the first sentencing hearing, Nelson objected to that portion of his presentence report holding him accountable for somewhere between $400,000 and $1,000,000 in losses for his fraudulent activities. Specifically, Nelson argued that he should not be held responsible for losses that occurred before May 2000, the date on which he admittedly entered into the conspiracy. Additionally, Nelson argued that he could not be held responsible for the losses of all of his alleged co-conspirators because the full scope of the conspiratorial activities was unknown and unforseen by him. The United States conceded that its calculations included amounts from before May 2000. It argued, however, that it would be nearly impossible to calculate the loss as to the specific date that Nelson entered the conspiracy. The district judge, who was given the United States' calculation exhibits only a short time before the first sentencing hearing and had not had the time to review them, adjourned the hearing until October 3, 2002, to give the government the time it needed to do the calculations that Nelson requested. Seven days later, on August 8, the district court reconvened and accepted the United States' initial calculations over Nelson's objection.

On appeal, Nelson argues that the district court's summary acceptance of the United States' calculations did not comply with its burden under Rule 32 of the Federal Rules of Criminal Procedure.  *See* FED. R. CRIM. P. 32(i)(3)(B)(formerly FED. R. CRIM. P. 32(c)(1)).  Rule 32 requires that the district court "for any disputed portion of the presentence report or other controverted matter–rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  We have recently reiterated that "the purpose of this rule [is] 'to ensure that sentencing is based on reliable facts found by the court itself after deliberation,' and thus, the district court cannot 'summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'"  *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003) (quoting *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002)).

This Court requires literal compliance with Rule 32 when sentencing issues are contested by the parties.  *See United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997); *Darwich*, 337 F.3d at 666.  In *Monus*, we vacated the defendant's sentencing enhancement and remanded the case for re-sentencing when the district court, over the objection of the defendant, simply stated that it was "convinced that the defendant is at least . . . responsible for in excess [of] 80 million dollars . . . ."  *Id.*  The fact that the district court failed to explain how it calculated the amount of loss and failed explicitly to respond to the defendant's "specific factual objections to the methods of calculation" troubled this Court. *Id.* at 396-97.  Moreover, we found that the district court violated Rule 32 by failing to make written findings on the controversy.  *Id.* at 397.  Indeed, we noted that while "the court need not establish the value of the loss with precision, Rule 32 requires it to publish the resolution of contested

factual matters that formed the basis of its calculation."  *Id.* (internal citations omitted).[2]

With respect to the Rule 32 issue, this case is virtually indistinguishable from *Monus*.  In this case, the only response to Nelson's objections to the calculations was when the district judge announced, "I have had an opportunity to review the submissions by both the defendant and the government and I have concluded that the government is correct and that it is no longer necessary to go through the exercise of doing further research."  Similar to *Monus*, the district court gave no indication as to how it calculated the loss and determined that the government's calculations were correct nor did it respond to Nelson's specific objections.

Moreover, even a cursory glance at the United States' loss exhibits raises concerns.  For example, some of the sheets contain no dates and there are several people who are identified, presumably as part of the conspiracy, but there is no indication as to how they fit into the conspiracy in relation to Nelson.  Indeed, there are several names mentioned for the first time on these loss exhibits that are not found in any of the indictments against Nelson or in his presentence report.

In response, the United States cites *United States v. Jackson*, 25 F.3d 327 (6th Cir. 1994), for the proposition that Nelson bears a heavy burden in establishing that the district court erred in calculating the loss amount.  Indeed, in *Jackson* this Court stated that the defendant carries "a heavy burden of persuading this Court that the evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations."  25 F.3d at 330 (citing U.S.S.G. § 2F1.1, comments (now U.S.S.G. § 2B1.1, comment (2(C))).  However, whether the district court erred in its calculations is

---

[2]Since *Monus*, Rule 32 has been amended, but the essence of the rule's requirements remain unchanged.  Thus, our analysis is guided by *Monus*.

a separate question from whether the district court failed to meet its burden under Rule 32. Properly understood, Nelson's argument is not so much a challenge to the final calculation decision made by the district court, but rather to the fact that the district court failed specifically to respond to his objections to these calculations. Moreover, in *Jackson* the district court noted that it had "carefully considered [the] evidence," 25 F.3d at 330, before finding "that the aggregate losses were in excess of $800,000." *Id.* From the record before us, we cannot determine whether the district court "carefully considered the evidence" precisely because it failed to respond to Nelson's objections. Thus, we find *Jackson* distinguishable.

In short, "[a]lthough the evidence may justify holding [Nelson] accountable for [$593,366.60 in loss], the district court's failure to explain its factual determination requires [this Court] to remand the case for his resentencing." *United States v. Orlando*, 281 F.3d 586, 601 (6th Cir. 2002) (finding that the district court erred in failing to determine the date the defendant entered into the conspiracy and the scope of unlawful behavior that the defendant had agreed to undertake). Thus, we VACATE Nelson's fourteen level sentencing enhancement and REMAND for re-sentencing at which time the district court should issue findings with respect to Nelson's specific objections to the United States' loss calculations.