NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0584n.06

No. 13-1408

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Aug 01, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| TERRENCE O. WASHINGTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE, ROGERS, and ALARCÓN[*], Circuit Judges.

ALARCÓN, Circuit Judge. Defendant-Appellant Terrence O. Washington appeals from the judgment of conviction imposed following a trial by jury of a violation of 18 U.S.C. § 513(a) for possession of a counterfeited security and possession of stolen mail in violation of 18 U.S.C. § 1708. He contends that the district court abused its discretion in admitting hearsay statements. He also asserts that the evidence was insufficient to persuade a rational trier of fact of his guilt of a violation of 18 U.S.C. § 513(a).

Washington also seeks vacation of the sentence imposed by the district court. He argues that the court erred in denying him a two-level reduction for his acceptance of responsibility and in applying a two-level increase for the number of victims of his crimes. He also asserts that the court

---

[*] The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

erred in applying a three-level increase for his role in his criminal activity. He also challenges the court's finding as to the amount of loss of his victims.

We affirm the judgment convicting Washington of the alleged crimes because we are persuaded that the evidence was sufficient and that no prejudicial error occurred in the district court's evidentiary rulings. We vacate the sentence, however, and direct the district court to conduct further proceedings and make findings regarding the number of victims of Washington's crimes, the amount of loss they suffered, and his role in the crimes.

The parties have each waived oral argument. They are well acquainted with the facts necessary to resolve this appeal. Since we have concluded that the issues raised do not present novel issues requiring publication of our opinion, we set forth only those facts necessary to address the legal issues raised by the parties.

## I

In January 2012, a grand jury indicted Washington on one count of possession of a counterfeited security in violation of 18 U.S.C. § 513(a) and one count of possession of stolen mail in violation of 18 U.S.C. § 1708. Under a Rule 11 Plea Agreement, he agreed to plead guilty to the § 513(a) count in exchange for the Government's agreement to dismiss the § 1708 count. The parties also agreed that, if the district court decided to impose a sentence higher than 96 months, Washington could withdraw his guilty plea.

During his plea hearing on March 27, 2012, Washington pled guilty and reserved his rights to contest the number of victims, the amount of loss, and his role in the offense at sentencing. The Government did not object. The district court accepted Washington's guilty plea and took the plea

agreement, with Washington's reservations, under advisement pending sentencing. During the hearing that was to serve as Washington's sentencing on July 25, 2012, the court rejected the plea agreement because it found the agreed-to maximum sentence inadequate.[1] The court also rejected Washington's position that he could plead guilty and still dispute the number of victims, the loss, and his role in the offense at sentencing.

Washington then opted to proceed to trial. After a two-day trial on November 27–28, 2012, a jury convicted him on both counts.

Washington's December 11, 2012 Presentence Report ("PSR") calculated his total offense level as 31, assigned him a criminal history category of VI, and determined that he was subject to a guideline range of 188 to 235 months, pursuant to the 2012 Guidelines ("USSG"). The PSR concluded, however, that the applicable statutory maximums limited his term to 180 months.[2] Washington's total offense level included a 14-level increase for loss of $540,471.40 "combined between two victims," the check verification services Certegy Check Services ("Certegy") and TeleCheck; a four-level increase for involvement of at least 67 victims; a three-level increase for his role as a "manager or supervisor" of the criminal activity; and no reduction for acceptance of responsibility. Before sentencing, the Government stipulated that Washington's total offense level in his PSR should have been a 29, based on a two-level increase for involvement of 10 or more, but

---

[1] Before this hearing, Washington filed a Sentencing Memorandum on July 24, 2012. It was the first of two Sentencing Memoranda that he filed in this case. In it, he objected to the then-current Presentence Report's recommendations on the number of victims, the amount of loss, and his role in the offense. During the hearing, the district court acknowledged that it had reviewed Washington's objections.

[2] The consecutive combination of the statutory maximum sentences of 10 years for violations of 18 U.S.C. § 513(a) and five years for violations of 18 U.S.C. § 1708 amounts to 180 months.

less than 50, victims. The stipulation resulted in a guideline range of 151 to 188 months with a statutory maximum sentence of 180 months.

In his Sentencing Memorandum, Washington objected to the PSR's recommendations on the number of victims, the amount of loss, his role in the offenses, and his acceptance of responsibility.

During his sentencing hearing on March 26, 2013, Washington expressly raised two objections to the PSR. First, he objected that the PSR did not give him credit for acceptance of responsibility because he had "debriefed with the Government a number of times" prior to his plea agreement, "fully admitted" responsibility in the plea agreement, and "[h]e did not testify at the trial." The court denied the objection. It explained that Washington "didn't fully admit his responsibility because he did it on his terms, in terms of what he thought would be the victims and so forth" and that "he didn't accept responsibility in the sense that the Sentencing Guidelines look to [as] evidenced by the trial.

Second, Washington objected that "there should not be any increase for number of victims because the two check clearing companies . . . reimbursed their clients," leaving only Certegy and TeleCheck as victims. In response, the Government explained that, during trial, a Certegy fraud investigator had testified that Certegy had two broad categories of clients, warranty merchants and self-risk merchants, and that Certegy reimburses the former, but not the latter, category for erroneously authorized checks. The Government stated that there had been 37 non-reimbursed self-risk merchant victims.[3] The court denied the objection as "supported by all the testimony.

---

[3] The record does not reflect that the Government established the number of self-risk merchants or their losses at trial or during sentencing. As explained below, the Government concedes on appeal that there is an issue with the support for its calculation of the number of victims in this matter that requires

Afterwards, Washington and the court engaged in the following exchange:

THE COURT: Okay. What's the next one?

[Counsel for Defendant]: Well, your Honor, the other objections really just go to the calculations and such. You know, based on what I was saying what the level should be. So every time it was brought up I just --

THE COURT: They're repeated.

[Counsel for Defendant]: So --

THE COURT: Anything you want to -- I think they have been dealt with, but anything that you want, that you think --

[Counsel for Defendant]: I would say that's what's important, your Honor, to address.

THE COURT: Okay. So let the record reflect that . . . we have a total offense level of 29; a criminal history of 6 where the guideline provisions are 151 to 188 [months]. The 188 [months] . . . exceeds the statutory maximum. So it would really be 180 [months] because that would be the statutory combined maximum.

The court then proceed to impose its sentence.

During his sentencing hearing, Washington did not expressly restate the objections he had raised in his Sentencing Memorandum to the amount of loss or his role in the offenses.

The court's total offense figure of 29 indicated that it implicitly adopted the PSR's recommendations as adjusted downward by the Government's stipulation. The court sentenced

remand for resentencing.

Washington to a term of 180 months. The court also imposed $540,471.40 in restitution, of which $349,173.72 was to be paid to Certegy and $191,297.68 to TeleCheck.

**II**

**A**

Washington asserts that the district court erred by admitting three alleged hearsay statements into evidence at trial. This Court "review[s] a district court's evidentiary rulings only for abuse of discretion." *United States v. Morales*, 687 F.3d 697, 701–02 (6th Cir. 2012) (citation omitted). "[R]eversal is appropriate only if the abuse of discretion was not harmless error, that is, only if the erroneous evidentiary ruling affected the outcome of the trial." *Id.* (citation and internal quotation marks omitted).

First, Washington contends that the court erred in admitting a U.S. Secret Service agent's testimony that a Nevada driver's license was counterfeit:

[Government] Q How do we know that is a counterfeit Nevada driver's license?

[Agent Holtz, U.S. Secret Service] A First of all, the number in the upper right-hand corner . . . I contacted the field office out in Las Vegas.

[Counsel for Defendant]: Objection. Hearsay, your Honor.

[Government]: It's not being offered for the truth of the matter asserted. It's being offered to explain why this agent has rendered [his] opinion . . . .

THE COURT: He may testify.

A I contacted the field office to see check on the number to see if it was a legitimate number. I was informed it was not.

. . . As well as the symbol the, the stamp, if you look at it, it's the upside down symbol of the state of Michigan.

Agent Holtz's testimony does include hearsay to the extent he described what the Las Vegas field office told him about the license in question, but the error is harmless. Agent Holtz also testified that an upside down State of Michigan seal was affixed to the Nevada license. In light of this uncontested testimony, Agent Holtz's prior hearsay testimony cannot be said to have materially affected the outcome of Washington's trial.

**B**

Washington also argues that the court erred in admitting a detective's testimony about a related investigation concerning Washington. The transcript reads as follows:

[Detective Bernas, Deerfield Police Department] A I investigated the case involving Mr. Washington regarding several counterfeit checks and a stay he had at the Hyatt Hotel.

[Government] Q Do you have an understanding as to why . . . officers from the Deerfield Police Department investigated activity which you just described[?]

A My understanding is the Hyatt Hotel contacted --

[Counsel for Defendant]: . . . I'm going to object. I think it's still hearsay.

THE COURT: It is hearsay, but it's designed to segue I believe as to his testimony; is that correct?

> [Government]: That is absolutely correct.
>
> THE COURT: He may proceed.
>
> Q What is your understanding?
>
> A My opinion is the Hyatt Hotel contacted Deerfield Police Department because the subject was staying under the name of Dat Midnightsea. . . . He had previously stayed there two other times, and every time that this person stayed they paid with a counterfeit check.

This Court has explained that, "[i]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Martin*, 879 F.2d 1368, 1371 (6th cir. 1990) (citing cases). The context of Detective Bernas's testimony establishes that his assertion of the police department's reason for investigating the activity in question was offered for the limited purpose of explaining why the Deerfield Police Department's investigation was undertaken. Under *Martin*, this is non-hearsay testimony.

This case is distinguishable from *United States v. Nelson*, 725 F.3d 615 (6th Cir. 2013). In that case, police officers testified about a 911 dispatcher's description of the defendant and the fact that he had a gun. *Id.* at 619. The government argued that statements of the dispatcher were offered as background and not to show that the defendant had a gun. *Id.* at 620. However, we concluded that the government offered the dispatcher's statements for the truth of the matter asserted, i.e. that the defendant possessed a gun. *Id.* at 620. Given the context of the case, "a less-detailed statement indicating that the police received a 911 call" would have been sufficient to explain why the officers

investigated the defendant. The context of these cases is different. Nelson involved a garden-variety response to a 911 call. But here, Detective Bernas' was describing an ongoing investigation. Describing an investigation's background is appropriate when the statement is "necessary to provide the jury with a coherent narrative explaining complex interactions between criminal defendants, police officers, and cooperating witnesses." *Id.* at 620–21.

But more importantly, the dispatcher's identification of a gun in the defendant's possession in Nelson was critical to the prosecution's case. "The Government's other evidence was circumstantial, and no officer testified to having seen Nelson possess a gun." *Id.* at 621. Because the statement went to "the heart of the government's case," we concluded that admitting the statement was not a harmless error. *Id.* But here, there was overwhelming evidence of Washington's guilt. In that context, it is much less clear that the government was offering Detective Bernas' statement for its truth rather than as background. And even if the statement was offered for its truth, any error was harmless in light of the substantial evidence of Washington's guilt.

## C

Lastly, Washington alleges that the court erred in admitting the following testimony of another federal officer about another related investigation concerning Washington:

> Q How is it that you have a knowledge of [the Post Office's investigation involving Washington]?
>
> [Agent Fix, U.S. Postal Inspection Service] A In August of 2009, I was contacted by Postal Inspectors out in St. Louis, Missouri. They had -- a business out

there had some mail that was stolen from them in the weekend of August 15th, 2009.
And then shortly thereafter one of the checks was deposited --

[Counsel for Defendant]: Objection, your Honor. Hearsay.

[Government]: This is not being offered for the truth asserted. All this is
going to show is why --

THE COURT: He may continue.

Q Please continue.

A One of the checks was deposited into an account in the Detroit area. I
began investigating that check. And as my investigation continued . . . I was advised
by one of the inspectors in St. Louis that Agent Holtz of the Secret Service was also
investigating a similar matter. So once we determined that our cases were
overlapping we joined together and assisted with his investigation.

As with Detective Bernas's testimony above, the context of Agent Fix's testimony establishes that
his assertion of other postal inspectors' identification of stolen mail was offered for the limited
purpose of explaining why the Post Office's investigation was undertaken. Under *Martin*, this is
non-hearsay testimony.

Washington also argues that, in addition to being hearsay, the three statements referred to
Washington's prior bad acts in violation of FRE 404(b). However, in each case, Washington's
lawyer objected to the statements as hearsay, and not as prior bad acts. A specific objection on one
ground will not preserve other grounds on appeal. For example, in *United States v. Seymour*,
468 F.3d 378, 384 (6th Cir. 2006), a defendant objected to a piece of evidence as unfairly prejudicial

under FRE 403 at trial. But on appeal, the defendant argued that the evidence was inadmissible under FRE 414. *Id.* We held that, as the grounds for the defendant's objection was not obvious from context, the defendant had failed to preserve his objection by not specifically invoking FRE 414. We proceeded to review admission of the evidence for plain error. Because Washington did not object under FRE 404(b) at trial, this court reviews the admission of those statements for plain error. Given the substantial evidence of Washington's guilt—in particular his written confession—Washington cannot show that any error affected his substantial rights as is required to make a showing of plain error. *See United States v. Barnett*, 398 F.3d 516, 526 (6th Cir. 2005).

## III

Washington also contends that the Government did not meet its burden to prove a violation of 18 U.S.C. § 513(a) at trial. In pertinent part, § 513(a) provides, "Whoever makes, utters or possesses a counterfeited security of . . . an organization . . . with intent to deceive another person, organization, or government shall be" guilty of an offense against the United States. 18 U.S.C. § 513(a). The term "security" includes checks. *Id.* § 513(c)(3)(A). The term "organization" means "a legal entity . . . which operates in or the activities of which affect interstate or foreign commerce." *Id.* § 513(c)(4). The section does not define "person."

Washington maintains that to prove a violation of § 513(a) the Government is required to establish that the counterfeit checks at issue (1) "be of an organization which operates in or the activities of which affect interstate or foreign commerce" and (2) "be used with intent to deceive another person [or] *organization which operates in or the activities of which affect interstate or foreign commerce*." He contends that the Government's evidence "did not connect the alleged

misconduct by Washington to checks from an interstate organization *nor* with an intended target of an interstate organization."

This Court "review[s] *de novo* a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014) (citation and internal quotation marks omitted). "In evaluating a sufficiency of the evidence claim, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 430–31 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

Washington's first argument challenges the sufficiency of the evidence that his counterfeited checks were of an organization that operates in or the activities of which affect interstate commerce. Without explanation, he states that the trial testimony of the finance manager of the School Community Health Alliance of Michigan and the chief financial officer of AC Lewis Management "did not establish [a] sufficient connection to interstate commerce." The Alliance and AC Lewis were listed as payors on some of Washington's counterfeited checks. Washington, nonetheless, concedes that the Alliance, which operated in Michigan, "disbursed checks to vendors in Mississippi, Alabama and Delaware" and that AC Lewis, which operated in Louisiana, "had vendors they pay outside the state of Louisiana." Br. for Appellant at 46–47. This undisputed testimony established that both the Alliance and AC Lewis were organizations that operate in, or the activities of which affect, interstate commerce.

Washington's second argument challenges the sufficiency of the evidence regarding the target of Washington's deceptive intent. Again without explanation, Washington states that "[t]here was an insufficient showing that the organizations to whom allegedly counterfeit checks were passed were themselves engaged in interstate commerce." In the indictment, though, the grand jury charged Washington with violating § 513(a) "with the intent to deceive another *person or organization*."

Lorenzo Hughes, who worked for Washington by passing counterfeited checks and providing related support services, testified during trial that he would call Certegy to check on the status of Washington's counterfeited checks and "try[] to get them approved for a certain amount." Certegy's fraud investigator testified that the company provided products and services "nationwide." Washington did not dispute this testimony.

Hughes also testified that he passed counterfeited checks for Washington at "[n]umerous stores throughout the Detroit area" by deceiving store employees. He went to stores approved by Washington, bought goods with checks counterfeited by Washington, and used fake identification provided by Washington. Hughes testified that, when he went to buy something, "[t]he driver license number . . . would already be on the check with a number change in order for it to pass through the clerk." He explained, "I pretty much had [the license number] on the check before I get into the store. Once I would present it to the clerk, I make her aware that the driver's license number is already on the check. So that way she won't pay as much attention to my driver's license number." He also explained that Washington "taught" him to alter the number he wrote on the check slightly from the number on his fake identification "[i]n order to keep using the same ID." Washington did not dispute this testimony either.

Section 513(c)(4) defines an "organization," in part, by its relationship to interstate commerce, but it does not do so with respect to a "person." 18 U.S.C. § 513(c)(4).As a result, § 513(a) does not require the Government to prove an individual victim's link to interstate commerce. *Id.*; *see also United States v. Chappell*, 6 F.3d 1095, 1099 (5th Cir. 1993) ("Section 513 does not require the government to demonstrate an individual victim's connection to interstate commerce."). The uncontroverted testimony established that Washington intended to deceive both Certegy, which operates in interstate commerce, and various individual retail associates.

**IV**

Washington raises four procedural issues with his sentence. "'[A]ppellate review of sentencing decisions is limited to determining whether they are reasonable.'" *United States v. Mackety*, 650 F.3d 621, 623 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)) (internal quotation marks omitted). We review for abuse of discretion. *Gall*, 552 U.S. at 46, 51. If a court committed errors "such as failing to calculate (or improperly calculating) the Guidelines range" or "selecting a sentence based on clearly erroneous facts," it will be found to have imposed a procedurally unreasonable sentence and abused its discretion. *Id.* at 51. We review the court's factual findings for clear error. *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008).

**A**

Washington asserts that the district court erred in denying him a two-level reduction for his alleged acceptance of responsibility. He argues that he is "entitled to sentencing credit for acceptance of responsibility where this matter only went to trial because the District Court rejected the Rule 11 Plea Agreement."

A defendant who "clearly demonstrates acceptance of responsibility for his offense" may receive a two-level reduction in his total offense level. USSG § 3E1.1(a). "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt . . . ." *Id.* cmt n.2. A defendant who exercises his right to a trial may qualify for the reduction in "rare situations"—such as where he "goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.*

This case is not a "rare situation." At trial, although he did not testify, Washington disputed his guilt. In his opening, his counsel declared that "the Government [could] not prove[] its case beyond a reasonable doubt." R. 40, Nov. 27, 2012 Tr. at PgID 222. He explained that "the linchpin of the Government's case" was the testimony of Lorenzo Hughes, who was "the only . . . individual who knew Mr. Washington at the time of the events that are the subject of this lawsuit," and that Hughes "was caught in the act of committing fraud." *Id.* at 221, 222. He concluded that Hughes "has much to lose, and he has a person to blame . . . Terrence Washington. And that easily gives rise to false testimony." *Id.* at 221. During cross examination, Washington's counsel tried to portray Hughes as lying about Washington's culpability. R. 41, Nov. 28, 2012 Tr. at PgID 450–51. And, in his closing, Washington's counsel proclaimed, "The defense is that Mr. Washington is not guilty of either of the two charges against him." *Id.* at 521. At sentencing, the district court did not find an honest acceptance of responsibility. We are persuaded that this finding was not clearly erroneous.

**B**

Washington contends that the district court erred in applying a two-level increase for the number of victims involved, pursuant to USSG § 2B1.1(2)(A)(i), because the PSR attributed all of

the loss at issue to two victims: Certegy and TeleCheck. He also contends that the Government failed to provide any support for the alleged number of Certegy's self-risk merchant victims. The Government "concedes that the sentencing record, as it stands, does not support the two-level increase in Washington's guideline calculation under USSG § 2B1.1(b)(2)(A) for an offense involving 10 or more victims" and that "the case should be remanded for resentencing." Br. for U.S. at 15, 22. It explains that the PSR failed to incorporate a spreadsheet showing that there were 37 self-risk merchant victims and that "the government mistakenly neglected to introduce the spreadsheet as an exhibit at the sentencing hearing." *Id.* at 16. Accordingly, because the record does not support any sentence enhancement for the number of victims involved pursuant to USSG § 2B1.1(b)(2), we conclude that this part of Washington's sentence is procedurally unreasonable.

**C**

Washington further asserts that the district court erred in applying a three-level increase for his role as a "manager or supervisor" of the criminal activity, pursuant to USSG § 3B1.1(b), because there was insufficient evidence to support the increase and the court applied it "without explaining its reasoning." Similarly, he asserts that the court erred in applying a fourteen-level increase for loss of $540,471, pursuant to USSG § 2B1.1(b)(1)(H), because "the only evidence adduced at Washington's trial was a loss of $34[9],000.00, from the testimony of Certegy's [fraud investigator]," which should have resulted in a twelve-level increase. He also contends that the court "did not explain how it arrived at this higher [loss] figure." During his sentencing hearing, Washington did not expressly restate the objections he had raised in his Sentencing Memorandum to his role in the offenses or the amount of loss. The Government responds that the trial evidence

supported the role enhancement. It also responds that Washington "waived" his loss objection "by abandoning it at his sentencing hearing."[4]

Washington first objected to his role in and the loss from his offenses during the proceedings on his plea agreement, which the district court rejected. He then reiterated these objections in his Sentencing Memorandum. At sentencing, the court noted that it had "stud[ied]" Washington's Sentencing Memorandum. After Washington unsuccessfully objected to the PSR's recommendations on his acceptance of responsibility and the number of victims at sentencing, he started to raise his remaining objections. The court, however, interjected that such objections were "repeated" and that "they have been dealt with.

Rule 32 of the Federal Rules of Criminal Procedure provides that, at sentencing, district courts "*must*--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]" Fed. R. Crim. P. 32(i)(3)(B) (emphasis added). "This Court requires literal compliance with Rule 32 when sentencing issues are contested by the parties." *United States v. Nelson*, 356 F.3d 719, 722 (6th Cir. 2004) (citing cases).

Because Washington objected to his role in the offenses and the amount of loss, the district court was required to address his objections, pursuant to Rule 32. *See United States v. Poulsen*, 655 F.3d 492, 512–13 (6th Cir. 2011) ("The Sixth Circuit requires 'literal compliance' with Rule 32, so when matters are contested the court must explain its [loss] calculation methods." (quoting *Nelson*,

---

**4** The Government does not make the same "waiver" argument concerning Washington's role objection.

356 F.3d at 722–23)); *United States v. Darwich*, 337 F.3d 645, 667 (6th Cir. 2003) (stating, where disputed matter would affect sentencing, "Because the matter of leadership role was disputed by [defendant] in his objections to the PSR, the district court had an obligation under Rule 32(i)(3) to issue a ruling on the disputed matter . . . ."). The record of Washington's March 26, 2013 sentencing hearing does not show that the district court either expressly ruled on the disputes concerning Washington's role or loss or expressly determined that such rulings were unnecessary.[5]

Additionally, the record does not support the district court's statement that Washington's remaining role and loss objections "ha[d] been dealt with" previously. Prior to Washington's March 26 sentencing hearing, Washington had only one other opportunity to raise these objections—his July 25, 2012 hearing. At Washington's July 25 hearing, though, the court rejected the parties' plea agreement only and, therefore, had no occasion to address Washington's objections. In light of this, it is unclear how the court determined that Washington's remaining objections were foreclosed because it provided no explanation on the record.

---

[5] The Government concedes that the district court "did not make a specific finding on loss amount." Br. for U.S. at 21.

Additionally, although the court noted that Washington "w[as] obviously a leader" as it imposed its sentence, this statement does not address the Washington's role objection. A determination that a defendant was a "*leader* of a criminal activity that involved five or more participants or was otherwise extensive" results in a four-level increase, while a determination that a defendant was "*manager or supervisor* (*but not an organizer or leader*) and the criminal activity involved five or more participants or was otherwise extensive" results in a three-level increase. USSG § 3B1.1(a) & (b) (2012) (emphasis added). Washington's December 11, 2012 PSR recommended that the court find that Washington was a "manager or supervisor (but not an organizer or leader)" and, therefore, subject to a three-level increase. As described above, the court's total offense figure of 29 indicated that it implicitly adopted the PSR's recommendations, including its three-level role enhancement, as adjusted downward by the Government's stipulation. Moreover, the court provided no explanation on the record for stating that Washington was a "leader."

The court's sentence was, therefore, procedurally unreasonable because it erred in not addressing Washington's role and loss objections. These errors affected Washington's substantial rights because they may have caused him to receive a more severe sentence than he should have received under the Guidelines. *See* Fed. R. Crim. P. 52(a); *United States v. Johnson*, 467 F.3d 559, 564 (6th Cir. 2006) (noting that an error at sentencing is harmless where it did not cause the defendant to receive a more severe sentence).

**V**

For the reasons set forth above, we **AFFIRM** Washington's conviction, but we **VACATE** his sentence, and we **REMAND** for resentencing. On remand, the district court should determine whether Washington is subject to sentencing enhancements for (i) the number of victims involved in his offenses, (ii) his role in the offenses, and (iii) the amount of loss stemming from his offenses in accordance with Rule 32(i)(3)(B).