NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0021n.06

No. 13-3882

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 07, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| DONTE BOOKER | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: MCKEAGUE and KETHLEDGE, Circuit Judges; HOOD, District Judge.[*]

KETHLEDGE, Circuit Judge. Cleveland police officers and an ATF agent tricked Donte Booker into attempting to possess cocaine with the intent to sell it, in violation of 21 U.S.C. §§ 841 and 846. Booker appeals his conviction, arguing that the government entrapped him as a matter of law. Booker also argues that the district court should have allowed the jury to hear evidence about his wrongful conviction for an unrelated rape. We affirm.

I.

Booker served 17 years in prison for a 1987 rape he did not commit. After his release, a DNA test proved his innocence and the convictions were vacated. Ohio later paid Booker $618,000 to settle his wrongful-conviction lawsuit.

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The sting operation at issue here took place several years later. In October 2012 an informant, Daisetta Harris, told Cleveland Detective Todd Clark that Booker had asked her to help him rob drugs and money from stash houses. Detective Clark set up a sting operation to catch Booker. At Detective Clark's behest, Harris told Booker that she knew two people who might be willing to help with a robbery: a woman named Angelique, and Angelique's drug-courier boyfriend, Andre.

Harris later introduced Booker to "Angelique" (an undercover policewoman) at a meeting in a dark parking lot outside of a local Burger King. Booker told the officer and Harris "that he was a professional," and that he "didn't want to deal with any amateurs." R. 70 at 10-11. Booker's "profession," he said, was robbing drug dealers. Booker later met "Andre" (an undercover ATF agent). Andre agreed to tell Booker where he was delivering drugs. Booker proposed to follow Andre to a hotel and rob him. Booker told Andre that, during the robbery, Booker would pistol whip him, duct tape him, and put him in the trunk of Booker's car, so that Andre's boss would not suspect him of involvement in the heist. R. 69 at 187. Booker also said that, if necessary, he "would kill anybody up in this bitch." R. 70 at 14.

Andre's real bosses at the ATF were concerned about his safety, so Detective Clark arranged a new plan to avoid potential violence. Harris and Angelique met with Booker again; this time Angelique told Booker that Andre would leave ten kilograms of cocaine in an unlocked car in a hotel parking lot. Then, Booker could simply walk up to the car and take the drugs. Booker agreed to the new plan. He also told Angelique that he already had a buyer lined up for the cocaine, so selling it would be no problem. R. 70 at 16-17.

The police set up surveillance at a La Quinta Inn parking lot, and put a duffel bag with ten kilograms of fake cocaine in a black Chevy Avalanche. Harris called Booker and told him

everything was ready. After darkness fell, Booker drove to the hotel and scouted the lot. He parked, ran to the Avalanche, took out the bag of fake drugs, and ran back to his car. Then, a SWAT team moved in. Booker tried to escape, but he crashed his car into a snow bank. He then fled on foot onto a busy freeway, but a policeman caught up with him, moved him off the freeway, and arrested him.

Booker was indicted for attempted possession of cocaine with intent to distribute. Before trial, the government moved to exclude evidence about Booker's exoneration in the 1987 rape case. R. 22. The district court granted the motion, but said that its ruling was "interim." R. 69 at 2. The court added that it would revisit the issue if Booker could convince the court that the exoneration was relevant to the drug charge. *Id.*

At trial, the prosecution played audio and video recordings of Booker's meetings with the undercover agents. Booker testified that he was merely acting out scenes from one of his favorite movies. R. 51 at 22, 27-28. Booker also testified that the robbery was Harris's idea, and that she had repeatedly called him and urged him to participate. *Id.* at 20-21, 25-30. The jury ultimately convicted Booker, and he was sentenced to 200 months' imprisonment. This appeal followed.

## II.

## A.

Booker first argues that the district court should have granted his motion for acquittal because he was entrapped as a matter of law. Booker made the motion after the close of the government's case, but he failed to renew the motion at the end of the trial. Thus, we will reverse the district court only if necessary to correct a "manifest miscarriage of justice." *United*

*States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010) (quotation marks omitted). Under this standard, we affirm unless "the record is devoid of evidence pointing to guilt." *Id.*

To prove entrapment, a defendant must show both that the government induced the crime and that he lacked the predisposition to commit it. *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010). If a defendant shows inducement, the burden shifts to the government to prove predisposition beyond a reasonable doubt. *See Jacobson v. United States*, 503 U.S. 540, 548-49 (1992). The ultimate question is whether the government implanted a criminal disposition in the mind of an "unwary innocent," or instead merely tricked an "unwary criminal." *United States v. Harris*, 9 F.3d 493, 497 (6th Cir. 1993). Entrapment is usually a jury question: a defendant is entrapped as a matter of law only when the facts are "undisputed" and demonstrate a "patently clear absence of predisposition." *Id.* at 497-98 (quotation marks omitted).

Here, setting aside the question of inducement, we ask whether Booker was predisposed to possess and distribute cocaine. Booker told Harris and the undercover officers that he robbed stash houses for a living, and that he would have no problem selling the stolen drugs. R. 69 at 128, R. 70 at 10-11. Harris testified that, in her first meeting with Booker—which was supposed to concern identity theft—Booker first brought up the idea of robbing a drug house. R. 69 at 128-29. The undercover officer who posed as Angelique testified that Booker was impatient to carry out the robbery and frustrated by delays. R. 70 at 17. In short, a great deal of evidence at trial suggested that Booker was predisposed to possess and sell cocaine. Thus, the district court properly denied Booker's motion for acquittal. *Harris*, 9 F.3d at 497-98.

B.

Booker also argues that the district court should have denied the government's motion to exclude evidence of his exoneration in the rape case. Normally, we review a district court's

evidentiary rulings for an abuse of discretion. *United States v. Poulsen*, 655 F.3d 492, 510 (6th Cir. 2011). If before the trial a district court excludes evidence on a temporary or conditional basis, however, the losing party must attempt to introduce that evidence at trial to preserve the issue for appeal. *Poulsen*, 655 F.3d at 510 (losing party must object at trial after conditional denial of motion in limine); *Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003). Here, the district court said that its ruling was "interim," and invited Booker to "approach the bench and try to get a different ruling" during trial if Booker still believed the evidence was relevant. R. 69 at 2. Booker never accepted the district court's invitation, so he forfeited this argument. Thus, we review only for plain error. *See Crowe*, 334 F.3d at 133. The exclusion was plain error if, among other requirements; the alleged error was clear and affected the outcome of the trial. *United States v. Lawrence*, 735 F.3d 385, 401 (6th Cir. 2013).

The district court held that evidence of Booker's exoneration for the 1987 rape charge was not relevant to any issue in his trial. Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible under Rule 402. *Id.* at 402.

Here, Booker contends that his exoneration was relevant to the predisposition element of his entrapment defense. Specifically, he says that the large sum of money he received as a result of the exoneration is relevant to the question whether he was motivated by profit. The amount of money Booker had is indeed relevant to that question; but the *source* of the money is not. And nothing in the district court's ruling prevented Booker from presenting evidence about the amount of money he had. As for the exoneration itself, it establishes only that Booker was innocent of a rape in 1987; it says nothing about his predisposition to commit a drug crime in

2013.  Thus, the exoneration was inadmissible, and the district court did not plainly err in excluding it.

Finally, Booker argues that excluding the exoneration violated his constitutional right to present a meaningful defense.  *See United States v. Blackwell*, 459 F.3d 739, 752-53 (6th Cir. 2006).  But a defendant's right to present a meaningful defense does not include a right to present evidence that is "inadmissible under standard rules of evidence."  *Id.* at 753 (quotation marks omitted).  Here, as shown above, Booker's exoneration was inadmissible under Rule 402, so this argument is meritless as well.

The district court's judgment is affirmed.